# CASES

DECIDED IN THE

# SUPREME COURT OF GEORGIA

AT THE

## MARCH TERM, 1918.

## THOMPSON *v.* THE STATE.

1. The evidence was sufficient to authorize the court to give to the jury the definition of a principal in the second degree, and in doing so the court did not charge in such way as to mislead or confuse the jury.

2. "Statements made by a defendant charged with murder, that he did the killing charged because of certain facts which if true furnished no legal excuse or justification therefor, amount to a confession." The statements made by the defendant in the present case were of that character.

3. On the hearing of a motion for a new trial, one of the grounds being alleged incompetency or disqualification of one of the jurors trying the case, on account of alleged bias and prejudice against the accused, the judge is the trior of that issue; and where in such case the evidence is conflicting, his discretion in refusing a new trial on that ground will not be disturbed unless it is manifestly abused. Such discretion was properly exercised in the present case.

4. The other grounds of the motion for a new trial are without merit, and the court did not err in overruling the motion.

No. 470. MARCH 12, 1918.

Indictment for murder. Before Judge Terrell. Troup superior court. June 23, 1917.

*E. A. Jones* and *W. C. Wright,* for plaintiff in error.

*Clifford Walker,* attorney-general, *C. E. Roop,* solicitor-general, *Frank Harwell, Leon Meadors, Arthur Greer, Hatton Lovejoy,* and *M. C. Bennet,* contra.

HILL, J. John Thompson and Walter Eastridge were jointly indicted for the murder of W. B. Shirey. Thompson was placed on trial, and a verdict of guilty was rendered against him, without recommendation. He made a motion for a new trial, which was overruled, and he excepted.

1. The first special ground of the motion complains that there was no evidence in the case to authorize the charge of the court on the law applicable to a principal in the second degree, and that the charge given was calculated to confuse and mislead the jury, and was therefore harmful and prejudicial to the defendant. The charge complained of was as follows: "A person, gentlemen, may be principal in an offense in two degrees. A principal in the first degree is the actor or absolute perpetrator of the crime. A principal in the second degree is he who is present aiding and abetting the act to be done. The punishment for a principal in the second degree is the same as the punishment for a principal in the first degree. There is no difference, gentlemen, in the punishment. If you should find in this case, under the evidence and under the law as I have already given you in charge and will hereafter give you in charge, that the defendant, John Thompson, is guilty of murder under the evidence, that he was the actor or absolute perpetrator of the crime, why then that would end your deliberations, and you should return a verdict accordingly. But you may inquire whether or not, under the evidence, if he is not the actor or absolute perpetrator of the crime, as to whether or not, under the evidence, he is guilty as a principal in the second degree. In order to constitute one a principal in the second degree, there must be a common purpose,—a common intent existing in the minds of both; that is, in this case, in the minds of John Thompson and Walter Eastridge, to kill and murder W. B. Shirey; and it must further appear, in order to constitute John Thompson a principal in the second degree, not only that this common purpose existed,— that there was a felonious design to kill and murder W. B. Shirey, and that John Thompson shared that design with Walter East- ridge,—that must not only appear, but it must further appear that John Thompson was present in pursuance of that design, and that he was present aiding and abetting Walter Eastridge to commit that crime. If you believe, from the evidence in this case, that Walter Eastridge was the actual perpetrator of the crime,—that is, if you find, under the evidence, that he killed and murdered W. B. Shirey, and you further find, from the evidence, that there was a common purpose, a common intent, a common design, exist- ing in the minds of John Thompson and Walter Eastridge to kill and murder W. B. Shirey, and you further find that John Thomp-

son was present participating in the killing and murdering of W. B. Shirey, and that he was aiding and abetting Walter Eastridge to commit the crime, why then, gentlemen, under such circumstances as those, John Thompson would be guilty of murder as principal in the second degree. In criminal law, gentlemen, the word 'abet' means to encourage, to set another on to commit a crime. To abet another to commit a crime is to command, to procure, or to counsel him to do it; and presence and participation are necessary to constitute one an abettor. Even if one is present at the commission of a crime, mentally approving or consenting to the same, yet, if that consent was unknown to the person committing the crime, the one so mentally approving could not be held guilty as a principal. If you believe, from the evidence, that it was the common purpose shared in by both of them, by the defendant on trial, John Thompson, and Walter Eastridge, to kill and murder W. B. Shirey or any person at such still at the time W. B. Shirey was shot and killed, that they both shared in the felonious design and purpose to kill W. B. Shirey or any person at the still, as indicated, at that time, in pursuance of such common purpose, and you further find that the defendant, John Thompson, was present and in pursuance of a common purpose and design to do so, shared by himself and Walter Eastridge,—was aiding and abetting Walter Eastridge in seeking to kill and murder W. B. Shirey or some person at such still at the time indicated, and under such circumstances Walter Eastridge shot and killed W. B. Shirey, and you find that Walter Eastridge is guilty of murder in killing W. B. Shirey, then John Thompson, the defendant on trial, would be guilty of murder as principal in the second degree, and you should so find if you believe those facts to exist."

We do not think the charge is open to the criticisms directed against it. It is a full and clear statement of the law applicable to the phase of the case with which the court was then dealing, and was not calculated to mislead the jury. The evidence showed that on the day of the homicide the deceased, W. B. Shirey, who was sheriff of Troup county, left LaGrange about 12 o'clock noon in an automobile with "Captain Henderson, a revenue man," S. A. Smith, a deputy sheriff, and Earnest Riley, a chauffeur, for Thompson's [the defendant] still, which was 10 or 12 miles from LaGrange. After arriving there, and while breaking up the still,

a number of shots were fired, at the sheriff's party by persons in hiding about fifty or sixty yards away, and Shirey was killed. Thompson was in LaGrange before Shirey left there, saw him, and received information that Shirey and his party had left or were leaving in a car going in the direction of Thompson's still. Thompson soon followed in a car going at a high rate of speed, and reached the neighborhood in which the still was. He notified three other men of the neighborhood engaged in illicit distilling, Lon Hart, Lewis Hart, and Walter Eastridge, that the "revenue officers" were in the neighborhood. All four of the men started in the direction of the still of the Harts, but before arriving there Thompson and Eastridge left the Harts and went towards Thompson's still and there both fired a number of shots from ambush with their pistols, one of the bullets striking and killing Shirey. Thompson and Eastridge later in the afternoon (the killing occurred about 2:30 p. m.) appeared at the home of Lewis Hart, and, according to witnesses other than Eastridge, Thompson told them how the killing occurred; that he emptied his pistol, and "if I didn't do it, it wasn't my fault," etc. Thompson asked the witnesses who testified as to the conversation to say that at the time of the shooting he was at another place, working on his car. Eastridge testified, as to the actual shooting, that both Thompson and he were together near the still, and "Both of us went to shooting. I shot kinder to the right the way John shot. . . As well as I remember I shot four times. It may have been I shot five times." The acts and statements of Thompson and Eastridge both before and after the killing were testified about by the two Harts, Harris, Cleaveland, and others. The evidence showed that Thompson advised Eastridge that the revenue officers were in the vicinity of the still; that both had pistols; that they went in the direction of the still until they found the tracks of the officers, which they followed in the direction of the still; that they were advised by the Harts not to follow the officers farther; that they came within a short distance of Thompson's still, when they fired from ambush at the officers. The defendant in his statement said that Walter Eastridge shot at them several times. They left together and were seen later the same day together, when Thompson attempted to get witnesses to say that at the time of the shooting he was fixing his automobile. This evidence was sufficient to authorize the jury

to find that the defendant was a principal in the first or second degree, and the court to give the charge to which exception is taken. *Brown* v. *State,* 125 *Ga.* 281, 284 (54 S. E. 162) ; *Walker* v. *State,* 136 *Ga.* 126 (70 S. E. 1016) ; *Coleman* v. *State,* 141 *Ga.* 731 (2), 733 (82 S. E. 228).

2. The trial judge charged the jury the law relative to confessions; and this charge is excepted to on the ground that there was no evidence of any confession on the part of the accused, and that the alleged confession, taken most strongly against him as to what he was alleged to have said with reference to the death of W. B. Shirey by shooting, would amount at most to an incriminating circumstance only, and that the charge was therefore harmful and prejudicial to the defendant. We can not agree to this contention. There is no exception to the charge itself as not being a correct statement of the law on the subject of confessions. The only question is whether the language attributed to the defendant amounted to a confession. The record shows that after the homicide Thompson made the following statement with reference to his shooting of the deceased: "Something was said about the killing of the sheriff. He said he got him. John said he got him. Said rather it had been him than any of the rest. Got Mr. Shirey. Said he laid the pistol by the side of the pine and took aim the first time. After that he couldn't tell for the smoke. He shot as fast as he could. He said he fired his pistol until it snapped." None of the above quotations are from the testimony of Eastridge, who was jointly indicted with Thompson, although he did testify as to a confession. In *Jones* v. *State,* 130 *Ga.* 274 (4), 277 (60 S. E. 840), it was held: "Statements made by a defendant charged with murder, that he did the killing charged because of certain facts which if true furnished no legal excuse or justification therefor, amount to a confession." And see, to the same effect, *Owens* v. *State,* 120 *Ga.* 296 (48 S. E. 21). In the instant case the defendant admitted killing Shirey, and offered no legal excuse as to why he killed him. He said he took "dead aim at the man that was tearing down the furnace, and shot until he snapped." "John said he got him, . . got Mr. Shirey," etc. At the time of the homicide it was illegal to operate a still for making whisky in this State. We think the evidence authorized the charge on the law of confessions as applicable to the case.

3. In the seventh ground it is complained that the judge did not grant a new trial on the ground that one of the jurors before whom the case was tried was not a fair and impartial juror. On the hearing of the motion a number of affidavits were introduced in evidence, to the effect that the juror had made statements, before he was taken on the jury, in substance that the defendant was guilty, and he was drawn on the jury to try him, and that he was going to convict him of murder. There was an affidavit of the juror denying the statements attributed to him; and there were affidavits as to his good character, and as to his conduct in the jury-room during the consideration of the case. There were also the affidavits of four of the affiants who testified that the juror had stated that he would convict the defendant, in which they repudiated, in the main, the statements attributed to them, and averred that they were ignorant of the contents of the affidavits when they signed them. The evidence was conflicting on the issue as to the partiality of the juror. The judge is the trior of the competency and disqualification of the juror, under the evidence, and in such case his discretion in refusing a new trial on such ground will not be disturbed unless it is manifestly abused. *Hall* v. *State,* 141 *Ga.* 7, 9 (80 S. E. 307) ; *Elliot* v. *State,* 132 *Ga.* 758 (2), 759 (64 S. E. 1090). It certainly was not abused in the instant case.

4. The other grounds of the motion are without merit. The evidence authorized the verdict, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. All the Justices concur, except Fish, C. J., absent.*