## McCLOUD *v.* THE STATE.

1. The refusal of the judge to give to the jury certain instructions as requested by counsel for the defendant does not require the grant of a new trial, where these instructions, so far as they were correct and applicable, were fully covered by the general charge.
2. Generally, a trial judge errs if he treats an inculpatory admission made by a defendant as a confession, and gives to the jury the law relating to confessions.
(*a*) If a defendant makes an extrajudicial statement in which he admits

the commission of a homicide, but couples the admission with a statement of facts which excuses or justifies the homicide, such statement is not a confession, and the trial judge errs if he charges the law relating to confessions.

(b) Where there is evidence tending to show that the defendant admitted the killing, and he states no circumstance of excuse or justification in connection with such admission, the trial judge does not err in charging upon the subject of confessions.

(c) Where a defendant charged with murder makes a statement out of court, in which he admits that he committed the homicide because of certain facts which furnish no legal excuse or justification, such a statement amounts to a confession, and authorizes a charge of the law relating to confessions.

(d) The sheriff of the county in which the homicide was committed visited the defendant in the jail of an adjoining county, and during such visit asked the defendant if he wanted to talk with him about it. The defendant replied, "Yes," that he wanted to confess and get right with God, that he killed the deceased, and told the sheriff that the homicide occurred in this manner: The deceased, a policeman, overtook defendant on Broad street, and wanted him to go back to the restaurant where he had had some disturbance. He started back with the policeman and told him that he (defendant) was not the man. He walked on back up to Market and Clark streets with the policeman, stopped, and told him that he (defendant) was not the man, and that he was not going any further. The policeman said, "Yes, you are, God damn you, go ahead," and reached for his gun. When he reached for his gun the defendant shot him once; he staggered, and defendant shot him again; and after the policeman fell, the defendant did not know how many more times he shot. *Held*, that such statement by the defendant that he killed the deceased under the circumstances named furnished no legal excuse or justification for the homicide, amounted to a confession, and authorized a charge of the law relating to confessions.

3. Where, under the undisputed evidence and the voluntary statement of the defendant last referred to, the defendant had been arrested by the slain policeman for violations of the ordinances of the city in which he was a policeman, and was in the custody of the officer at the time of the homicide, the court did not err in instructing the jury that there was no dispute about the fact that the defendant was in the custody of the slain officer at the time the homicide was committed. ·

No. 6501. MAY 17, 1928. REHEARING DENIED JUNE 13, 1928.

Murder. Before Judge Custer. Decatur superior court. February 27, 1928.

Medie McCloud was indicted for the murder of S. B. Arline in the City of Bainbridge, on October 14, 1927. Arline was a night policeman of said city. There were three wounds on his person. One went through his left hand. This wound indicated that he must have been holding something at the time the bullet struck his hand, which was down by his side. Another wound was about mid-

way the right side. The bullet making this wound fractured the second, third, fourth, and fifth ribs on the right side. This bullet went through the transverse colon and the stomach, hit the artery on top of the vertebræ, and lodged in the muscles of the back on the right side of the body. According to the medical testimony, the deceased died from hemorrhage and shock from the shot that ruptured this artery. The wounds were inflicted by pistol bullets. The bullet that caused the wound on the left side of the deceased ranged a little downward. It entered almost straight. The deceased must have been almost on the ground when the bullet that caused the wound on the right side entered, from its range. Two bullets were removed from the body. They looked like thirty-eights, though they were badly battered.

The defendant was employed as head-waiter at the Callahan hotel in Bainbridge. On the night of the homicide he got off from his duties at the hotel between 7:30 and 8 o'clock. About 9 or 9:30 Edna Glover met the defendant on the street. She had a conversation with him. He was drinking at that time; she smelled whisky on his breath. He said he was trying to get something to drink, and couldn't. He left then and was gone about a minute. On his return he asked her to have a drink. He had a pistol in his bosom, and showed it to her. He was seen at the fair grounds about 10 or 11 o'clock. He was next seen at a dance in the auditorium on Broad street, about 12 or 12:30 o'clock. He went from the dance hall to a restaurant kept by a Greek by the name of Mourmouris. He ordered an egg omelette and a cup of coffee. The Greek gave them to him. He began to curse the Greek, who called the deceased, who was down by the busy corner. The policeman came in three or four minutes. When the Greek called the policeman, the defendant went out of the back door. When the policeman got down there the defendant was in the back yard. He went down Clay street to the hotel. The deceased followed him. When the defendant was leaving the restaurant, he asked those there if the policeman was coming. He told them to look around the corner and see if the policeman was coming. Willie Oats said, "Yes, he is coming in a half trot." The deceased came in the front door of the restaurant. About 2 o'clock the defendant went to the hotel and borrowed from the night clerk $3. He seemed to be drunk. He had a thirty-eight pistol in his pocket. The clerk advised him

o

to go home and go to bed. He then walked out of the front door of the hotel to the street running in front of it. About thirty minutes afterwards the clerk heard of the death of Arline.

John Clenney was aroused from his sleep by shooting. He jumped up and ran out in the direction of the shooting. He found the deceased lying on his face, and his left hand under him. His flashlight was lying close to his hand. The deceased did not speak. Clenney gave the alarm. It was about 2:30 when Clenney was awakened by the shooting. The shots were about as close as they could be shot. The body was on Clark street, just off of the sidewalk. The deceased was lying right over on his face, with his right hand stretched out, and a flashlight lying only a short distance from his right hand. There was evidence of a struggle, about six or eight feet south from where he was; there was scuffling. It looked like he dragged his foot, trying to go north. The flashlight was broken. His left hand was somewhat back up under him. His right hand was stretched out. He had a pistol in his scabbard, on his person. He had a blackjack in his hip pocket. Neither pistol nor blackjack was disturbed. His coat was unbottoned. The pistol had not been fired. None of the chambers were empty. A big arc light was burning near where the body was found. Just a little after daylight, four empty shells and one loaded, of 38-caliber, were found on Water street, in the next block from the restaurant, going east.

H. L. Morgan, a deputy sheriff, arrested the defendant about eight o'clock the next morning. He went to the defendant's house and searched it. Cobb went with him. He found some shoes, and some 38-caliber short cartridges in the machine drawer. One had been snapped. They were the same as those found on Water street. The one that had been snapped was compared with those found on Water street that had been snapped, and in the opinion of the deputy sheriff the same gun snapped them all. The deputy sheriff got some shoes. He searched for tracks leading from the shells, found some, and tracked them from where the shells were found out across the street over to the Willis lot. They then went angling back and got on the sidewalk, went up Independence street, then crossed from one sidewalk to near the other sidewalk, then went south across to a little garage, then turned around and went back on the sidewalk to the north on Independence street. There the

officer lost the tracks on the sidewalk. He found shoes at the defendant's house that fitted these tracks. Those shoes were wet. They fitted the tracks around about the cartridges which he picked up on Water street, and the tracks that went from there on down on Independence street, where the officer lost them. There was something unusual about the bottom of these shoes. Soil was attached to them. The soil on the ground where this officer saw the tracks corresponded with the soil on these shoes.

The sheriff took the defendant to the Albany jail, to separate the persons under suspicion, so that he could investigate the case. This was the next morning after the homicide. About three days afterwards the sheriff went back to Albany. The defendant made a statement to him, in reference to the death of the deceased, freely and voluntarily, and without being induced by fear of punishment or hope of reward. The sheriff asked him how he felt. He said he was feeling bad. The sheriff asked him if he wanted to talk with him about it. He said yes, he wanted to confess and get right with God, that he killed the deceased, and told the sheriff how he did it. He said Mr. Arline overtook him on Broad street near the colored pool-room, opposite a brick pillar, at the old Stultz place, and wanted him to go back to the restaurant where he had had some disturbance; that he started back with Arline, and told him that he (defendant) was not the man, but that he walked back up to Market and Clark street with Arline, stopped, and told Arline that he was not the man, and that he was not going any further. Arline said, "Yes you are, God damn you, go ahead," and reached for his gun. Thereupon defendant shot him one time, he staggered, and defendant shot him again, and he fell; and that defendant did not know how many more times he shot. The defendant then stopped talking for a second, and the sheriff asked, "Which way did you go?" He said he went on down by the laundry, which is on Market and Clay streets, on the far corner of the block where the deceased was killed. He said he went on about a block from·the laundry and emptied his pistol on the ground. The sheriff told him about the cartridges they found and where they found them; and the defendant said, "Yes, sir, I emptied my gun there, and walked down to the Coast Line railroad and walked across the Coast Line trestle, and came back home." The sheriff asked what he did with his pistol, and he said he threw it in the river, in the middle of the

Coast Line trestle. He said he had not rested a bit until he had told the officers. The sheriff asked defendant what kind of shoes he wore the night he said he shot the deceased. He said he had on a sport-model shoe. The sheriff told him what kind of shoes he found at his house, and he did not deny that he had on that kind of shoes.

The defendant told the jailer that he was drunk upon the night he shot Arline. In evidence were the pistol-balls and shoes referred to; also ordinances of the City of Bainbridge, penalizing acts of disturbance of the peace, drunkenness on the streets, etc.

The jury found the defendant guilty, without recommendation. He excepted to the overruling of his motion for new trial. The grounds of the motion are sufficiently stated and dealt with in the headnotes and the opinion.

*W. I. & P. Z. Geer,* for plaintiff in error.

*George M. Napier, attorney-general, B. C. Gardner, solicitor-general, T. R. Gress assistant attorney-general, C. E. Crow,* and *P. D. Rich,* contra.

HINES, J. (After stating the foregoing facts.)

1. The special grounds of the motion for new trial, from one to seventeen inclusive, complain of the refusal of the judge to give to the jury certain instructions as requested by counsel for the defendant. So far as these instructions were correct and applicable, they were fully covered by the general charge; and for this reason the refusal of the requests does not require the grant of a new trial.

2. A trial judge errs if he treats an inculpatory admission as a confession, and gives in charge to the jury the law relating to confessions. *Dumas* v. *State,* 63 *Ga.* 600 (5); *Jones* v. *State,* 65 *Ga.* 147; *Covington* v. *State,* 79 *Ga.* 687 (7 S. E. 153); *Fletcher* v. *State,* 90 *Ga.* 468 (17 S. E. 100); *Lee* v. *State,* 102 *Ga.* 221 (29 S. E. 264); *Suddeth* v. *State,* 112 *Ga.* 407 (37 S. E. 747); *Cleveland* v. *State,* 114 *Ga.* 110 (39 S. E. 941); *Smith* v. *State,* 115 *Ga.* 586 (41 S. E. 984); *Lucas* v. *State,* 146 *Ga.* 315 (91 S. E. 72); *West* v. *State,* 155 *Ga.* 482 (11) (117 S. E. 380); *King* v. *State,* 163 *Ga.* 313 (11) (136 S. E. 154). If a defendant makes an extra-judicial statement in which he admits the commission of a homicide, but couples the admission with a statement of facts which excuses or justifies the homicide, such statement is not a confession; and the judge errs in charging the law relating to confessions. *Powell*

v. *State,* 101 *Ga.* 9 (4) (29 S. E. 309, 65 Am. St. R. 277); *Owens* v. *State,* 120 *Ga.* 296 (48 S. E. 21); *Harris* v. *State,* 152 *Ga.* 193 (6) (108 S. E. 777). In *Owens* v. *State,* supra, this court was divided upon this question; but after full and careful reconsideration, we have reached the conclusion that the opinion of the majority is supported by the previous and subsequent rulings of this court, by the weight of outside authorities, and by sound reasoning. 16 C. J. § 1467d; State *v.* Abrams, 131 Iowa 479, 108 N. W. 1041; People *v.* Cismadija, 167 Mich. 210, 132 N. W. 489; State *v.* Thomas, 135 Iowa, 717, 109 N. W. 900; 1 R. C. L. 550, § 99. Contra: State *v.* Porter, 32 Or. 135, 49 Pac. 964; Mortimore *v.* State, 24 Wyo. 452, 161 Pac. 766. It seems unreasonable to hold that a person who admits the commission of a homicide, but in the same breath states facts which excuse or justify the homicide, confesses that he is guilty of murder.

Where there is evidence tending to show that the defendant admitted the killing, and he states no circumstances of excuse or justification in connection with such admission, the trial judge does not err in charging upon the subject of confessions. *Coney* v. *State,* 90 *Ga.* 140 (15 S. E. 746); *Webb* v. *State,* 140 *Ga.* 779 (79 S. E. 1126); *Nail* v. *State,* 142 *Ga.* 595 (3) (83 S. E. 226); *Edwards* v. *State,* 159 *Ga.* 419 (126 S. E. 16). In a number of cases this court has held that a statement, made by a defendant charged with murder, that he did the killing because of certain facts which furnish no legal excuse or justification, amounts to a confession, and authorizes a charge of the law relating to confessions. *Jones* v. *State,* 130 *Ga.* 274, 278 (60 S. E. 840); *Thompson* v. *State,* 147 *Ga.* 745 (2) (95 S. E. 292); *Bowden* v. *State,* 151 *Ga.* 336 (5) (106 S. E. 575); *Minter* v. *State,* 158 *Ga.* 127, 132 (123 S. E. 23). Under the principle last ruled, we are of the opinion that the trial judge did not err in his charge to the jury upon the subject of confessions. In the defendant's statement to the sheriff he admitted killing the deceased; and the facts stated by him in extenuation of his act did not excuse or justify the homecide. These facts, when considered with the evidence in the case, do not excuse or justify the killing by the defendant of the policeman, who had arrested him and taken him in custody. The undisputed evidence shows that the defendant had been guilty of disorderly conduct and was drunk, and that such disorderly conduct and drunkenness within the city

limits of Bainbridge were punishable under the ordinances of the city. The deceased policeman had been called to arrest the defendant for the disorderly conduct which had taken place in a restaurant. The accused inquired of a bystander if the policeman was coming, and was told that he was coming in a trot. Thereupon the defendant went out of the back door of the restaurant, and the deceased came in at the front door and followed the defendant. According to the latter's statement as to how the killing occurred, made to the sheriff a few days after the homicide, the policeman overtook him on Broad street, and wanted him to go back to the restaurant where the disorderly conduct took place. He started back with the policeman, but stopped and told the officer that he was not the man, and that he was not going any further. The officer said, "Yes you are, God damn you, go ahead," and reached for his gun. Then defendant shot the officer, and, as the officer staggered, shot him again, and continued to shoot him. When the dead officer was found his pistol was in its scabbard, undrawn, and his blackjack was in his pocket. The provocation given by these words and this menace would not free the defendant from the guilt and crime of murder. *Malone* v. *State,* 49 *Ga.* 210 (7). No presentation of weapons, without a manifest intention to use them presently, will justify the killing. *Roberts* v. *State,* 65 *Ga.* 430 (4a). "No motion a man can make, throwing his hand behind him . . will justify another in shooting him, unless the circumstances show that the man who was making that motion presently intended to shoot the slayer." *Bailey* v. *State,* 70 *Ga.* 617 (4), 623.

But it may be said that, while the threats used by the deceased officer, and the reaching by that officer for his pistol, as claimed by the defendant, would not make a case of self-defense, these words and this gesture should be considered in determining whether the defendant acted under the fears of a reasonable man in shooting the deceased. *Cumming* v. *State,* 99 *Ga.* 662 (27 S. E. 177). In that case it was said: "It is true that in order to justify a homicide, there must be something more than mere verbal threats. There must be an appearance of imminent danger. The means of inflicting the threatened injury must apparently be at hand, and there must be some manifestation of an intention to inflict the injury presently; but it is not essential that there should be an actual assault." In *Taylor* v. *State,* 121 *Ga.* 348, 355 (49 S. E. 303), this

court reiterated this principle. The deceased made no threat of violence against the defendant. Being under arrest, the defendant refused to go with the policeman. Upon this refusal the officer used to him the language above set out, and reached for his pistol. It was not drawn. If the officer had drawn it, the defendant would not have been justified in slaying the officer in the absence of some manifestation by the officer of an intention to unlawfully inflict some injury presently upon him. Manifestly the officer was reaching for his pistol to enforce obedience on the part of the rebellious defendant to his arrest, and not with any purpose to kill the defendant or to inflict upon him some present injury. Under the circumstances, the statement of the defendant, in which he admitted the homicide, does not show any legal excuse or justification for the killing; and for this reason the court did not err in dealing with his statement as a confession.

3. The court charged the jury as follows: "The court charges you, gentlemen, under the facts and circumstances of this case, as made by the evidence of the State, that at the time of the alleged killing that the defendant was in the custody of the officer, although the officer may not have had his hands upon him—there is no disputing that he was in the custody of the officer." The defendant assigns error on this charge, upon the ground that the court expressed and intimated an opinion upon the facts in the case. "It is error," generally, "for the judge . . in any case . . in his charge to the jury, to express or intimate his opinion as to what has or has not been proved, or as to the guilt of the accused; and a violation of the provisions of this" law "shall be held by" this "court to be error, and the decision in such case reversed, and a new trial granted, with such directions as" this "court may lawfully give." Penal Code, § 1058. To this general rule there are exceptions. It is not error for the judge to state to the jury a fact which is admitted, and on which there is no issue. *Johnson* v. *State,* 30 *Ga.* 426 (5). Where a killing is admitted, the court may so state in charging the jury. *Hayes* v. *State,* 58 *Ga.* 35 (4). While the judge is forbidden to express an opinion as to whether any particular fact has been proved, yet when the evidence to establish a fact is undisputed, and the fact is admitted by the accused on his trial, it is not error for the judge to assume such fact in formulating appropriate instructions to the jury. *Taylor* v. *State,*

135 *Ga.* 622 (70 S. E. 237). When under the evidence a fact is not in dispute, the court may so instruct the jury. Under the undisputed evidence and the voluntary statement made by the defendant to the sheriff a few days after the homicide, the defendant had been arrested by the slain policeman for violations of the ordinances of the City of Bainbridge; and was in the custody of the officer at the time the defendant shot and killed the former. This being so, the trial judge did not err in so instructing the jury.

4. The other assignments of error do not require the grant of a new trial. *Judgment affirmed. All the Justices concur, except*

RUSSELL, C. J., who dissents, and ATKINSON, J., who dissents from the ruling in subdivision (*d*) of the second headnote.