### DANIEL *v.* THE STATE.

No. 12490.   JANUARY 11, 1939.

*D. E. McMaster* and *J. Paxson Amis,* for plaintiff in error.

*M. J. Yeomans, attorney-general, W. H. Lanier, solicitor-general, E. J. Clower,* and *O. H. Dukes,* contra.

JENKINS, Justice. ■ In an alleged situation requiring the killing of another in self-defense, "one can not create an emergency which renders it necessary for another to defend himself, and then take advantage of the effort of such other person to do so." *Price* v. *State,* 137 *Ga.* 71 (5), 73 (72 S. E. 908); *Pryer* v. *State,* 128 *Ga.* 28 (3) (57 S. E. 93); *Bowden* v. *State,* 126 *Ga.* 578 (3) (55 S. E. 499); *Short* v. *State,* 140 *Ga.* 780 (5), 784 (80 S. E. 8); *Parham* v. *State,* 180 *Ga.* 233 (178 S. E. 648).

■ "The violent taking of money or property from the person of another by force or intimidation for the purpose of applying the same to the payment of a debt, to which money or property the taker has no bona fide claim of title or right of possession, constitutes the offense of robbery." *Moyers* v. *State,* 186 *Ga.* 446 (197 S. E. 846). Resistance by armed force of an actual attempt to commit such a robbery would be justifiable under the Code, §§ 26-1011 and 26-1012, which provide that a person is legally justified in killing another "in defense of . . property, or person, against one who manifestly intends or endeavors, by violence or surprise, to commit a felony on either," provided that "the circumstances were sufficient to excite the fears of a reasonable man" that such an offense was about to be committed, "and that the party killing really acted under the influence of those fears, and not in a spirit of revenge."

■ Under the preceding holdings, the defendant on his trial for murder showed no facts constituting self-defense, where, not only in his undisputed extrajudicial statements to the sheriff and other witnesses, but in his statement to the jury, he admitted that, after an alleged 25-cent overcharge by the deceased of a taxicab fare, he "made it up in [his] mind to get [his] money back," borrowed a shotgun and hid it in the woods, lured the defendant in his taxicab to the scene at night by telling him that he (defendant) wanted to get some whisky, and further stated that as he walked through the woods with the deceased, while "I wasn't aiming to hurt him in no way, I was aiming to get my money back;" that

when they reached the place where the gun was hid, the defendant, walking in front of the deceased, struck matches to find the gun, and the deceased, following with a flashlight in one hand and a pistol in the other, fired the pistol at the defendant, but not until the defendant struck the matches and "bent over to get [his] gun and started to straighten up;" that after the defendant "squatted down" to dodge the pistol shot, he immediately fired the shotgun, the charge striking the deceased in the abdomen; that the defendant, after watching the deceased for twenty minutes, waiting for him to die, then took $31 from his person, hid $11 of the money under hay in his father's barn, removed the taxicab sign and other identifying marks from the car of the deceased, burned the money sack and other effects of the deceased, drove the car some distance away and parked it along a road, and, after leaving the body of the deceased lying in the woods for several days, paid his (the defendant's) brother five dollars to help him haul the body in a wagon and throw it in a creek, where it was found. These statements of the defendant himself, that he took the deceased into the woods for the purpose of robbing him with a shotgun, that he actually had that intent as he walked through the woods with the deceased, that the deceased never fired until the defendant reached down to pick up his shotgun, and that after killing the deceased the defendant consummated his intended robbery by taking $31 instead of 25 cents from the person of the deceased, and endeavored to conceal the homicide, showed that the defendant himself created any emergency in the situation in which he killed the deceased, and that malice and criminal intent existed, and failed to show self-defense or any exculpatory fact. See *Brown* v. *State,* 184 *Ga.* 305 (191 S. E. 108).

■ If a defendant makes an extrajudicial statement admitting the commission of a homicide, but couples the admission with a statement of facts which excuse or justify the homicide, such a statement is not a confession, and it is error to charge the law relating to confessions. But where the defendant admits the killing, and states no circumstance of justification or excuse in connection with such admission, or gives reasons which are insufficient to furnish any lawful justification or mitigation, the statements amount to a confession, and authorize a charge on that subject. *McCloud* v. *State,* 166 *Ga.* 436 (2-a, b), 441 (143 S. E. 558);

*Owens* v. *State,* 120 *Ga.* 296 (2) (48 S. E. 21); *Minter* v. *State,* 158 *Ga.* 127, 132 (123 S. E. 23); *Jones* v. *State,* 130 *Ga.* 274(4), 278 (60 S. E. 840); *Brown* v. *State,* 168 *Ga.* 282 (2), 287 (147 S. E. 519); *Thompson* v. *State,* 147 *Ga.* 745 (2), 749 (95 S. E. 292); *Wright* v. *State,* 186 *Ga.* 862 (199 S. E. 209). Under the preceding holdings, the statements of the defendant both before and in the trial amounted in law to confessions, and authorized the charge of the court thereon. In addition to this, since the brother of the defendant testified that when the defendant paid him five dollars to help move the body to a creek, the defendant admitted to him the killing without claiming any justification or excuse therefor, this testimony of itself authorized the charge.

■ Sheriffs are officers sworn by a general oath, "in all things, well and truly, without malice or partiality, [to] perform the duties of [their] office." Code, § 24-2804. Bailiffs, who may but need not be provided by the sheriffs or the courts under § 24-3351, must take a special oath under § 59-717, prohibiting them from giving to juries in their particular charge "meat or drink (water excepted), unless otherwise directed by the court." Sheriffs under their sworn duty not being precluded, any more than bailiffs under their special oath, from furnishing necessary drinking-water to juries, the fact that in this case the sheriff, instead of the bailiff, administered to the jury by carrying drinking-water into the jury-room at the request of one of the jurors, and there remained for two or three minutes without saying or doing anything relative to the case, in which the sheriff had testified to facts substantially the same as those stated by the defendant himself to the jury, fails to show any irregularity. But even if such act of the sheriff could be taken as irregular, nothing appears to show any prejudice to the defendant. See *Daniel* v. *Frost,* 62 *Ga.* 697 (7).

■ Upon the contention of the defendant, in his motion for new trial on the ground of newly discovered evidence, that he killed the deceased in self-defense, he set forth affidavits of several witnesses that one or more of them removed from the abandoned taxicab of the deceased and pawned a pistol, which had been usually carried by the deceased. In his statement to the jury the defendant mentioned taking to the car of the deceased, after the homicide, the shotgun which the defendant had fired, but said nothing as to taking any pistol to the car. The sheriff swore that he understood

the deceased "carried a pistol." No testimony showed as to whether the pistol referred to had been recently fired. Even if the defendant took this pistol to the car of the deceased, the alleged newly discovered evidence showed no fact additional to the undisputed statements of the sheriff and the defendant as to the carrying of a pistol and the circumstances attending its firing by the deceased, which, under the preceding rulings, failed to show self-defense by the defendant. Even if the alleged evidence could be taken as bearing any relevancy to the case, its materiality was too slight to authorize this court to interfere with the discretion of the judge in refusing a new trial because of such evidence.

*Judgment affirmed. All the Justices concur.*