## S01P0708. RHODE v. THE STATE.
### (552 SE2d 855)

HINES, Justice.

A jury found Brandon Joseph Rhode guilty of three counts of malice murder, three counts of felony murder, two counts of burglary, and one count of kidnapping with bodily injury.[1] The jury found beyond a reasonable doubt that the murder of Bryan Moss was committed while Rhode was engaged in the murder of Kristin Moss, was committed while Rhode was engaged in a burglary, was committed while Rhode was engaged in a kidnapping with bodily injury, and was outrageously or wantonly vile, horrible, or inhuman in that it involved depravity of mind. See OCGA § 17-10-30 (b) (2) and (7). The jury found beyond a reasonable doubt that the murder of Kristin Moss was committed while Rhode was engaged in the murder of Steven Moss and while Rhode was engaged in a burglary. See OCGA § 17-10-30 (b) (2). The jury found beyond a reasonable doubt that the murder of Steven Moss was committed while Rhode was engaged in the murder of Bryan Moss and while Rhode was engaged in a burglary. Id. The jury fixed the sentence for each murder at death. For the reasons set forth below, this Court affirms Rhode's convictions and sentences.

1. The evidence presented at trial suggested the following account of the crimes. Rhode and his co-perpetrator, Daniel Lucas, burglarized the home of Steven and Gerri Ann Moss on April 23, 1998, fled the scene when Rhode discovered an alarm system, and returned later that day to burglarize the home again. While Rhode and Lucas were ransacking the home searching for valuables, 11-year-old Bryan Moss arrived, observed Rhode and Lucas through a front window, and entered through a back door, armed with a baseball bat. Rhode and Lucas subdued Bryan at gunpoint, sat him in a chair, and began discussing what to do with him. Lucas turned and fired at the boy, inflicting a non-fatal shoulder wound. As Kristin Moss was approaching the house, Lucas took Bryan into a back bed-

---

[1] The crimes were committed April 23, 1998. Rhode was indicted June 30, 1998, by a Jones County grand jury for three counts of malice murder, three counts of felony murder, two counts of burglary, and one count of kidnapping with bodily injury. The State filed written notice of its intent to seek the death penalty December 18, 1998. Rhode's trial began February 14, 2000, and the jury found him guilty on all counts on February 25, 2000. The felony murder verdicts were vacated by operation of law. See *Malcolm v. State*, 263 Ga. 369, 371-372 (4) (434 SE2d 479) (1993); OCGA § 16-1-7 (a) (1). The jury fixed the sentences for the murders at death February 27, 2000. In orders filed February 27, 2000, the trial court imposed a death sentence for each murder and consecutive terms of life imprisonment for the kidnapping with bodily injury and twenty years for each of the two burglaries. Rhode filed a motion for new trial March 3, 2000, which was denied by an order filed December 22, 2000. He filed a notice of appeal December 27, 2000, and his appeal was docketed in this Court February 7, 2001. The appeal was orally argued June 11, 2001.

room. Rhode met Kristin as she arrived, sat her in a chair, and shot her twice with a .357 caliber pistol. Lucas repeatedly shot Bryan with a .25 caliber pistol. Rhode later shot Steven Moss with the .357 caliber pistol when Steven arrived. Finally, Lucas obtained a .22 caliber pistol from Rhode's automobile and shot Bryan and Kristin again.

Chad Derrick Jackson, Rhode's roommate, testified that he observed Rhode and Lucas handing rifles and other items out of Jackson and Rhode's bedroom window and loading them into Rhode's automobile on the evening of the crimes. Jackson further testified that Rhode and Lucas admitted to him the next day that Lucas first shot Bryan in the shoulder, that Lucas then shot Bryan while Rhode simultaneously shot Kristin, that Rhode next shot Steven Moss, and that lastly Lucas shot each victim to ensure their deaths.

Danny Ray Bell, who also lived in the same house as Rhode, testified that Rhode and Lucas spoke to him between the two burglaries and that Bell advised Rhode not to return to burglarize the same home. Bell testified that, at the time of this conversation, Rhode had a .357 caliber pistol in his waistband. According to Bell, when Rhode returned from the second burglary, Rhode said that he had "messed up big time" and needed to dispose of some weapons and other items. Rhode admitted to Bell that Lucas shot a young boy and that Rhode shot a girl and a man.

Several witnesses testified that they saw an automobile similar to Rhode's at or near the victims' home on the day of the murders. A search of Rhode's automobile revealed damage to the front and rear bumpers and a spare tire in the trunk that showed signs of use. A photograph of the crime scene suggested a vehicle had backed into a gas tank at the victims' home. Expert testimony disclosed that paint on a cement block at the victims' home matched the paint on Rhode's automobile, including two layers applied at the factory and a third layer likely applied later. Additional expert testimony indicated that a crime scene imprint could have been made by Rhode's spare tire.

Rhode made a statement admitting he fired two times at Kristin with the .357 caliber pistol, and he led law enforcement officers to two locations where he and Lucas had secreted weapons and other items. Expert testimony matched the found .357 and .25 caliber pistols to bullets retrieved from the crime scene and the victims' bodies.

Viewing the evidence produced at trial in the light most favorable to the jury's verdicts, this Court finds that it was sufficient to enable a rational trier of fact to find beyond a reasonable doubt that Rhode was guilty of all charges brought against him and that statutory aggravating circumstances existed as to each of the murders. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Sands v. State*, 262 Ga. 367, 368 (2) (418 SE2d 55) (1992); OCGA § 17-10-30 (b) (2) and (7).

*Jury Selection*

2. The trial court did not err by allowing a Harris County jury commissioner, who testified that she participated in revising the electronically-generated jury list, to certify the jury list nunc pro tunc. *Jackson v. State*, 76 Ga. 551, 565 (3) (1886); see also *Pope v. State*, 256 Ga. 195, 197 (1) (c) (345 SE2d 831) (1986) ("[W]e 'do not find here such disregard of the essential and substantial provisions of the statute as would vitiate the arrays.'") (quoting *Franklin v. State*, 245 Ga. 141, 147 (1) (263 SE2d 666) (1980)), overruled on other grounds by *Nash v. State*, 271 Ga. 281 (519 SE2d 893) (1999).

3. The process of qualifying jurors as to their views on the death penalty is not unconstitutional. *DeYoung v. State*, 268 Ga. 780, 790 (11) (493 SE2d 157) (1997).

4. Upon a review of the voir dire of prospective jurors in this case, particularly the portions highlighted by Rhode in this appeal, this Court concludes that the trial court did not abuse its discretion in limiting voir dire and that a thorough examination of each prospective juror, particularly of each prospective juror's death penalty views, was permitted. See *Barnes v. State*, 269 Ga. 345, 351-352 (10) (496 SE2d 674) (1998). The trial court properly sustained objections and gave cautionary directions to counsel when counsel's questions called for a prejudgment of the case or failed to set forth the entire context within which jurors would consider a death sentence, including any mitigating evidence presented and the charge of the trial court, and the voir dire permitted after each sustained objection or cautionary direction was more than adequate. See *Thornton v. State*, 264 Ga. 563, 572 (13) (a) (449 SE2d 98) (1994).

5. Rhode contends that the trial court erred by not excusing 14 specific prospective jurors based upon their death penalty views. The trial court did not err by failing to excuse sua sponte 12 contested prospective jurors who were not challenged for cause based upon their death penalty views. *Childs v. State*, 257 Ga. 243, 249 (7) (357 SE2d 48) (1987). Furthermore, one of the twelve prospective jurors was actually excused for reasons unrelated to his death penalty views. This Court finds, as to the two contested prospective jurors who were challenged for cause, that the trial court did not abuse its discretion in determining that the jurors' views on capital punishment would not " 'prevent or substantially impair . . . [their] duties as [jurors] in accordance with [their] instructions and [their] oath.'" *Greene v. State*, 268 Ga. 47, 48 (485 SE2d 741) (1997) (quoting *Wainwright v. Witt*, 469 U. S. 412, 424 (II) (105 SC 844, 83 LE2d 841) (1985)); see also *Waldrip v. State*, 267 Ga. 739, 743-744 (8) (a) (482 SE2d 299) (1997) ("A prospective juror's inability to recite circumstances which might lead her [or him] to vote for a life sentence is not

dispositive of her [or his] qualifications to serve as a juror.").

6. Rhode complains that three prospective jurors were erroneously excused for cause when they expressed an unwillingness or inability to consider a death sentence that was based on their understanding that Georgia law required execution by electrocution. A review of the record reveals that one of these prospective jurors was unwilling to consider a death sentence regardless of the method of imposition, and, furthermore, Rhode has waived his right to complain about that prospective juror by failing to object to the trial court's excusing her. *Earnest v. State*, 262 Ga. 494, 495 (1) (422 SE2d 188) (1992). Regarding the other two prospective jurors, Rhode correctly argues that jurors in Georgia death penalty trials play no role in determining the method by which a death sentence is carried out. However, where a prospective juror is unable or unwilling, for any reason, to consider one or more of the sentences authorized by law, that juror should be excused for cause upon motion by one of the parties. See *Wainwright*, 469 U. S. at 429 (III) ("[E]xcluding prospective capital sentencing jurors because of their opposition to capital punishment is no different from excluding jurors for innumerable other reasons which result in bias. . . ."); *Zellmer v. State*, 272 Ga. 735 (534 SE2d 802) (2000). Here, the unwavering biases of two of the prospective jurors against a death sentence, which arose both from personal knowledge and a preliminary charge about electrocution that had been requested by Rhode, rendered them unqualified. In fact, one of them was further unqualified because she was unwilling to consider a sentence of life with the possibility of parole. See *Zellmer*, 272 Ga. 735. The fact that the method of execution applicable in Rhode's case could be subject to change by the General Assembly or by court order is irrelevant, because it was the effect of the jurors' biases upon their deliberations that was at issue. Rhode's argument concerning the separation of governmental powers is also without merit.

7. Rhode complains that three prospective jurors were improperly disqualified based upon their unwillingness or inability to vote for the death penalty under any circumstances. Rhode raised no objection at trial regarding two of them, and the objection he raised regarding the third was withdrawn except as to the meritless contention that the trial court erred by allowing additional voir dire to clarify the juror's apparently contradictory responses. Accordingly, this claim has been waived. *Earnest*, 262 Ga. at 495 (1).

Rhode also complains that seven other prospective jurors were improperly disqualified when it appeared that their religious views would prevent them from considering a death sentence. This claim has also been waived because Rhode raised no objection to their disqualification other than a meritless challenge to the practice of quali-

fying jurors according to their death penalty views. Id.

### Guilt/Innocence Phase

8. The trial court correctly denied Rhode's pre-trial motion to suppress certain non-testimonial evidence and statements that were obtained during and as a result of non-custodial interviews at his residence and the Jones County Sheriff's Office and later interviews after he was advised of his rights under *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966). *Miranda* warnings were not required to be given at any point before they actually were, because Rhode was not then under arrest or confronted with circumstances that would have led a reasonable person in his position to believe he or she was under arrest. *Hightower v. State*, 272 Ga. 42-43 (2) (526 SE2d 836) (2000). Before Rhode gave his first formal statement and before he was under arrest or would reasonably have perceived himself to be under arrest, proper *Miranda* warnings were given, and these warnings were given so often after that that counsel argued below that they were given too many times. We find nothing to contradict the State's evidence showing that Rhode's statements were voluntary and that he never requested an attorney or wished to remain silent. See *Miranda*, 384 U. S. 436; OCGA § 24-3-50.

9. Rhode complains that photographs and other exhibits depicting the victims and the crime scene were improperly presented to the jury. This Court finds nothing in the record to support Rhode's contention that the trial court abused its discretion in weighing the probative value of any contested items against their allegedly improper prejudicial impact. See *Heidler v. State*, 273 Ga. 54, 60-61 (6) (537 SE2d 44) (2000); *Woods v. State*, 265 Ga. 685, 687 (3) (461 SE2d 535) (1995).

10. (a) Because the only evidence even remotely suggestive of a "serious provocation" sufficient to cause a reasonable person to kill was testimony suggesting that Steven Moss charged at Rhode upon witnessing the murder of his two children during an ongoing burglary, we find that a charge on voluntary manslaughter was not warranted. See *Nance v. State*, 272 Ga. 217, 221 (3) (526 SE2d 560) (2000); *Horton v. State*, 249 Ga. 871, 872 (1) (295 SE2d 281) (1982); OCGA § 16-5-2.

(b) Because the evidence in this case afforded no basis whatsoever for a finding that the killings were unintentional or that Rhode was guilty of trespass rather than burglary, the trial court properly refused to charge the jury on involuntary manslaughter involving an unintentional killing during an unlawful act other than a felony. OCGA § 16-5-3 (a). Even if it were admitted that Rhode shot Steven Moss when Steven, unarmed, resisted the burglary of his home and

the murder of his two children, such admission would not show that Rhode committed a lawful act of self-defense, and, therefore, a charge on involuntary manslaughter involving a lawful act committed in an unlawful manner would not be warranted. *Daniel v. State*, 187 Ga. 411, 412 (1) (1 SE2d 6) (1939) (holding that one cannot create an emergency requiring a killing and then claim self-defense), overruled on other grounds by *McMichael v. State*, 252 Ga. 305, 309, n. 7 (313 SE2d 693) (1984); OCGA § 16-5-3 (b).

(c) The evidence was overwhelming that Rhode was guilty of felony murder for the killing of Bryan Moss. The jury, by also finding Rhode guilty of malice murder, made an additional, specific finding that Rhode intended Bryan's killing. In light of these circumstances, it is highly probable that the trial court's refusal to give a charge on aggravated assault did not contribute to the verdict. *Edwards v. State*, 264 Ga. 131, 133 (442 SE2d 444) (1994).

### Sentencing Phase

11. Rhode argues that two confessions to crimes unrelated to the Moss murders, which he made when he was a juvenile, were improperly admitted during the sentencing phase. Two hearings held outside the jury's presence showed that both confessions were made after Rhode and his mother had been advised of and had acknowledged his *Miranda* rights, that he and his mother had then agreed to the interviews, and that his mother had remained present throughout both interviews. The trial court properly found that the confessions were voluntarily made and were preceded by *Miranda* warnings, even under the more stringent requirements applicable to the statements of minors. Id.; *Riley v. State*, 237 Ga. 124, 127-128 (226 SE2d 922) (1976).

Rhode also argues that these juvenile confessions should have been suppressed because law enforcement officers did not, prior to their making, bring him before a juvenile court or contact a juvenile court intake officer for a determination of whether he should have been released or detained. See OCGA §§ 15-11-19 (a) (3); 15-11-7 (b). Pretermitting the fact that this Court has previously held that "statements obtained in violation of the [Georgia] Juvenile Code are not rendered per se inadmissible," *Lattimore v. State*, 265 Ga. 102, 103-104 (2) (b) (454 SE2d 474) (1995), and the fact that the confessions at issue were made in Louisiana, this Court holds that Rhode waived his right to raise this issue on appeal by failing to raise it specifically at trial. *Earnest*, 262 Ga. at 495 (1).

12. Rhode contends that the prosecutor injected inadmissible hearsay into the sentencing proceedings by asking Rhode's mother on cross-examination if she had been present when a trial judge in Loui-

siana made certain comments to Rhode when sentencing him for burglary. Pretermitting whether the prosecutor was attempting to elicit hearsay testimony (specifically whether the out-of-court statement was offered for the truth of the matter asserted therein) and whether the testimony would have been cumulative of other admissible evidence and thus harmless, this Court holds that Rhode waived his right to raise this issue on appeal by failing to object at trial. Id.

13. Rhode contends that the prosecutor's cross-examination of him and the prosecutor's closing argument during the sentencing phase of the trial were improper and require reversal. Rhode raised a single objection during the prosecutor's cross-examination, arguing that the prosecutor was taking too long to arrive at an actual question. We find no error in the trial court's resolution of that objection, which was essentially withdrawn. Rhode's right to raise his other contentions on appeal were waived by his failure to object at trial, except insofar as the challenged questions and comments might have in reasonable probability changed the jury's exercise of its discretion in sentencing Rhode to death. See *Gissendaner v. State*, 272 Ga. 704, 713-714 (10) (b) (532 SE2d 677) (2000). See also *Heidler*, 273 Ga. at 64-65 (18). Although they were not preserved for appeal, this Court finds meritless Rhode's specific contentions that the prosecutor improperly disparaged the role of mercy and argued improperly by quoting Rhode's own statement under cross-examination, "My conscience is clear as far as anybody's death. . . ." See *Ford v. State*, 255 Ga. 81, 93-95 (8) (i-2) (335 SE2d 567) (1985) (addressing a closing argument that suggested mercy was not appropriate in that case), vacated on other grounds by *Ford v. Georgia*, 479 U. S. 1075 (107 SC 1268, 94 LE2d 129) (1987). Pretermitting whether any of Rhode's other, more generalized allegations of impropriety have any merit, this Court concludes upon its review of the record that there is no reasonable probability that the alleged improprieties changed the jury's choice of sentence and that, therefore, these alleged improprieties cannot serve as the basis for reversal.

14. (a) The jury's findings that the murder of Bryan Moss was committed during the murder of Kristin Moss, that the murder of Kristin Moss was committed during the murder of Steven Moss, and that the murder of Steven Moss was committed during the murder of Bryan Moss did not violate the rule against mutually-supporting aggravating circumstances. *Hightower v. State*, 259 Ga. 770, 772 (5) (386 SE2d 509) (1989). See OCGA § 17-10-30 (b) (2).

(b) Even if Rhode had been sentenced to death for committing kidnapping with bodily injury against Bryan Moss in addition to being sentenced to death for Bryan Moss's murder, there would be no violation of the rule against mutually-supporting aggravating circumstances. *Potts v. State*, 261 Ga. 716, 720-721 (4) (410 SE2d 89)

(1991). There was certainly no such violation here where a life sentence was imposed for the kidnapping with bodily injury.

(c) Burglary and kidnapping with bodily injury are not impermissible as statutory aggravating circumstances simply because they are less-serious crimes than murder, which can also serve as a statutory aggravating circumstance.

(d) This Court has determined that kidnapping and kidnapping with bodily injury are distinct crimes. See *Patrick v. State*, 247 Ga. 168, 170 (274 SE2d 570) (1981); OCGA § 16-5-40. Accordingly, Rhode's argument that the State relied upon a non-existent crime by including kidnapping with bodily injury as an alleged statutory aggravating circumstance is meritless.

15. The sentencing phase jury charges on mitigating circumstances, which were taken from the pattern jury charges, were not improper. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Part 4 (B), pp. 82, 88 (1999). The trial court defined and set forth the function of mitigating circumstances in a manner that would not have misled the jurors. See *Fugate v. State*, 263 Ga. 260, 262-263 (5) (431 SE2d 104) (1993). The trial court did not err by failing to charge the jury that findings of mitigating circumstances need not be unanimous, because the trial court properly charged the jury that it need not find *any* mitigating circumstances in order to return a sentence less than death. *Palmer v. State*, 271 Ga. 234, 238 (6) (517 SE2d 502) (1999). Viewing the sentencing phase charge as a whole, this Court concludes that the jury was not misled into believing that mitigating circumstances must be proven beyond a reasonable doubt or, for that matter, that any particular burden of proof rested on the defense as to mitigating circumstances. Id. The trial court was not required to identify in its charge the contended specific mitigating circumstance of residual doubt. See *Johnson v. State*, 271 Ga. 375, 385 (17) (519 SE2d 221) (1999).

16. Rhode contends that the trial court's sentencing phase charge on the OCGA § 17-10-30 (b) (7) statutory aggravating circumstance was unconstitutional for vagueness. The charge in question, which was taken directly from the pattern jury instructions and properly adjusted according to the evidence, was not unconstitutional. See Suggested Pattern Jury Instructions, Vol. II: Criminal Cases, Part 4 (B), pp. 84-86 (1999); *West v. State*, 252 Ga. 156, 158-160 (2), 161-162 (313 SE2d 67) (1984) (recommending a suitable clarifying jury charge); compare *Godfrey v. Georgia*, 446 U. S. 420 (100 SC 1759, 64 LE2d 398) (1980).

Rhode also contends that the jury's partial reliance on the OCGA § 17-10-30 (b) (7) statutory aggravating circumstance in recommending that he receive the death penalty for the murder of Bryan Moss was unconstitutional because it imposed vicarious liability on

him for Lucas's actions. This contention fails because, although the evidence suggested that Lucas was the triggerman in Bryan's murder, the evidence also supported a finding of depravity of mind on Rhode's part with regard to that murder in that Rhode continued to aid and abet Lucas in the murder despite the child's young age, despite an initial aggravated battery to the child that was committed in Rhode's presence, and despite the large number of gunshots required to kill the child. See *Thomas v. State*, 247 Ga. 233 (275 SE2d 318) (1981).

## Constitutional Issues

17. Rhode filed a motion to have execution by electrocution declared unconstitutional, but no evidence was admitted in support of this claim. This Court finds that the motion, standing alone, was insufficient to require that it be granted. See *Colwell v. State*, 273 Ga. 634, 640 (6) (544 SE2d 120) (2001) ("In the absence of admissible evidence demanding a different result, the trial court did not err in declining to declare execution by electrocution unconstitutional.").

18. The Unified Appeal Procedure exists for the protection of the rights of defendants in death penalty cases and is not unconstitutional or improper for any of the reasons alleged in this appeal. *Gissendaner*, 272 Ga. at 716 (18); *Jackson v. State*, 270 Ga. 494, 498-499 (10) (512 SE2d 241) (1999).

19. Georgia's death penalty statute is not unconstitutional, and, more specifically, "[t]his Court's review of death sentences is neither unconstitutional nor inadequate under Georgia statutory law." *Gissendaner*, 272 Ga. at 716 (16).

20. OCGA § 16-5-1, which defines malice murder and felony murder, is not unconstitutional for any of the reasons alleged in this appeal. See *Speed v. State*, 270 Ga. 688, 698 (48) (512 SE2d 896) (1999); *Chester v. State*, 262 Ga. 85, 88 (3) (414 SE2d 477) (1992).

## Sentence Review

21. Rhode actively participated in two burglaries of the Moss home, and he was armed at least during the second burglary. When confronted by 11-year-old Bryan Moss who was attempting to protect his family's home with a baseball bat, Rhode, along with Lucas, committed aggravated assault upon the child with a pistol. Although Rhode claims he was surprised when Lucas first opened fire on Bryan, inflicting a non-fatal wound, Rhode's conduct afterward demonstrated his intent to kill not only 15-year-old Kristin Moss, whom Rhode admitted shooting, but also Bryan, who was likely shot to death with Rhode's knowledge as Rhode held Kristin at gunpoint. The evidence also suggested that Rhode was the triggerman in the

killing of Steven Moss. While absolute certainty as to how many shots Rhode fired at each of the victims cannot be obtained, as the only surviving witnesses to the crimes are Rhode and Lucas, the evidence in Rhode's trial showed that he participated in all three murders. Although there was evidence that Rhode consumed alcohol and drugs on the day of the crimes and appeared to be "speeding," and although Rhode contended that his recollection of events was "hazy," the jury's reaction to the evidence of some level of intoxication within the context of the other evidence presented at trial was not unreasonable or excessive. See *Ross v. State*, 233 Ga. 361, 366-367 (2) (211 SE2d 356) (1974) ("It is the reaction of the sentencer to the evidence before it which concerns this court and which defines the limits which sentencers in past cases have tolerated. . . ."). The evidence showed that Rhode had a history of criminal conduct before the murders and that he escaped from the Jones County jail and participated in an attack on a guard in the Putnam County jail while awaiting trial in this case. See *Gissendaner*, 272 Ga. at 717 (19) (a) (noting that "past conduct and conduct after the crime" are relevant in a proportionality review). This Court's proportionality review "includes special consideration of the sentences received by co-defendants in the same crime," and, accordingly, the Court notes that Lucas has also been sentenced to death. *Allen v. State*, 253 Ga. 390, 395-396 (8) (321 SE2d 710) (1984).

This Court concludes, considering both the crimes and the defendant, that the death sentences imposed for the murders in this case were neither excessive nor disproportionate to the penalties imposed in similar cases in Georgia. OCGA § 17-10-35 (c) (3); see id. The cases appearing in the Appendix support this conclusion in that each demonstrates a jury's willingness to impose a death sentence where a defendant has committed more than one murder.

22. The death sentences in this case were not imposed under the influence of passion, prejudice, or any other arbitrary factor. OCGA § 17-10-35 (c) (1).

*Judgments affirmed. All the Justices concur, except Sears, P. J., and Hunstein, J., who concur in the judgment and in all Divisions except Division 17.*

APPENDIX.

*Colwell v. State*, 273 Ga. 634 (544 SE2d 120) (2001); *Esposito v. State*, 273 Ga. 183 (538 SE2d 55) (2000); *Heidler v. State*, 273 Ga. 54 (537 SE2d 44) (2000); *Morrow v. State*, 272 Ga. 691 (532 SE2d 78) (2000); *Pace v. State*, 271 Ga. 829 (524 SE2d 490) (1999); *Gulley v. State*, 271 Ga. 337 (519 SE2d 655) (1999); *Palmer v. State*, 271 Ga. 234 (517 SE2d 502) (1999); *Cook v. State*, 270 Ga. 820 (514 SE2d 657)

(1999); *Jenkins v. State*, 269 Ga. 282 (498 SE2d 502) (1998); *DeYoung v. State*, 268 Ga. 780 (493 SE2d 157) (1997); *Raulerson v. State*, 268 Ga. 623 (491 SE2d 791) (1997); *McMichen v. State*, 265 Ga. 598 (458 SE2d 833) (1995); *Stripling v. State*, 261 Ga. 1 (401 SE2d 500) (1991); *Isaacs v. State*, 259 Ga. 717 (386 SE2d 316) (1989); *Moon v. State*, 258 Ga. 748 (375 SE2d 442) (1988); *Ford v. State*, 257 Ga. 461 (360 SE2d 258) (1987); *Childs v. State*, 257 Ga. 243 (357 SE2d 48) (1987); *Romine v. State*, 256 Ga. 521 (350 SE2d 446) (1986); *Cargill v. State*, 255 Ga. 616 (340 SE2d 891) (1986); *Blanks v. State*, 254 Ga. 420 (330 SE2d 575) (1985); *Putman v. State*, 251 Ga. 605 (308 SE2d 145) (1983); *Wilson v. State*, 250 Ga. 630 (300 SE2d 640) (1983); *Rivers v. State*, 250 Ga. 303 (298 SE2d 1) (1982); *Rivers v. State*, 250 Ga. 288 (298 SE2d 10) (1982); *Waters v. State*, 248 Ga. 355 (283 SE2d 238) (1981).

CARLEY, Justice, concurring.

I concur in the opinion and in the affirmance of the conviction and death sentence. With regard to the enumeration of error discussed in Division 17, however, it should be emphasized that this Court has consistently and recently held that execution by electrocution is not unconstitutional. *King v. State*, 273 Ga. 258, 261 (5) (539 SE2d 783) (2000); *Heidler v. State*, 273 Ga. 54, 66 (25) (537 SE2d 44) (2000); *Gissendaner v. State*, 272 Ga. 704, 716 (16) (532 SE2d 677) (2000).

DECIDED OCTOBER 1, 2001 —
RECONSIDERATION DENIED OCTOBER 22, 2001.

*John F. Nebl, Francis N. Ford, Holly L. Geerdes*, for appellant.
*Fredric D. Bright, District Attorney, Gregory L. Bushway, Assistant District Attorney, Thurbert E. Baker, Attorney General, Karen A. Johnson, Assistant Attorney General*, for appellee.