## S90A0629. CONYERS v. THE STATE.
(397 SE2d 423)

BENHAM, Justice.

Appellant was convicted of and sentenced for prohibited stopping on a controlled-access highway (OCGA § 40-6-203 (a) (1) (I)), and for homicide by vehicle in the second degree (OCGA § 40-6-393 (b)), the underlying traffic offense being backing a vehicle on a controlled-access highway (OCGA § 40-6-240 (b)).[1]

Appellant and a passenger were driving east in the center lane of the northwest quadrant of I-285 when appellant believed he had missed his exit. The State presented evidence that appellant attempted to remedy his driving error by momentarily stopping while still on the interstate highway, putting his car into reverse, and backing up. Another vehicle struck appellant's car from behind, and appellant's passenger died from injuries sustained in the collision.

1. Appellant maintains that OCGA § 40-6-203, which prohibits stopping a vehicle in specified places, is unconstitutional because two of its terms, "stop," and "to avoid conflict with other traffic," are defectively vague.

OCGA § 40-6-203 provides

> Except when necessary to avoid conflict with other traffic, or in compliance with law or the directions of a police officer or official traffic-control device, no person shall: (1) Stop, stand, or park a vehicle: . . . (I) On any controlled-access highway. . . .

"Due process mandates that criminal laws give adequate warning of what conduct will constitute a crime." *Price v. State*, 253 Ga. 250 (1) (319 SE2d 849) (1984). A penal statute is not void for vagueness if, "in a manner that does not encourage arbitrary and discriminatory enforcement," it "define[s] the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited. [Cit.]" *Brinkley v. State*, 253 Ga. 541 (1) (322 SE2d 49) (1984). Webster's Third New International Dictionary defines "avoid" as "to keep away from; stay clear of," and "conflict" as "a striking or clashing together of material bodies or substances." "Stop" is statutorily defined in OCGA § 40-1-1 (57) (B) as meaning

---

[1] Appellant was also convicted of improper backing on a controlled-access highway (OCGA § 40-6-240 (b)); second degree vehicular homicide by backing his car when the movement could not be done safely and without interfering with other traffic (OCGA §§ 40-6-393; 40-6-240 (a)); and second degree vehicular homicide by stopping on a controlled-access highway (OCGA §§ 40-6-393; 40-6-203 (a) (1) (I)). The trial court ruled that these convictions merged into the counts for which appellant was sentenced.

any halting, even momentarily, of a vehicle, whether occupied or not, except when necessary to avoid conflict with other traffic or in compliance with the directions of a police officer or traffic-control sign or signal.

Thus, OCGA § 40-6-203 prohibits any halting, even if momentary, of a vehicle on a controlled-access highway except when necessary to keep clear from striking other traffic or to comply with the directions of a police officer or traffic-control signal or sign. The statute is "definite and certain in its meaning. Men of common intelligence would not differ as to the application of its provisions. [Cit.]" *McCord v. State*, 248 Ga. 765, 766 (285 SE2d 724) (1982).

2. Appellant contends that the five-count accusation filed against him failed to apprise him sufficiently of the charges against him, thereby abrogating his right to due process. The accusation charged appellant with improper backing and improper stopping, and the remaining three paragraphs charged him with second degree vehicular homicide committed in three alternative ways. "[W]here one [crime] is set out in various ways in the different counts to meet diversities in the proofs, no election of counts will ordinarily be required, but all will be left open for the jury to pass upon in their verdict." *Sutton v. State*, 124 Ga. 815, 816-17 (53 SE 381) (1905). Appellant was sufficiently apprised of the charges against him.

3. Appellant argues that the evidence was insufficient to support the jury's verdict and that he was entitled to a directed verdict of acquittal. By establishing that appellant's car was in a driving gear when appellant missed his exit; that the car was in reverse when it was struck by the second car; and that to change from "Drive" to "Reverse" necessitated stopping the car at least momentarily, the State presented evidence from which it could be deduced that appellant had stopped his car on the highway. The State also presented evidence that I-285 was a controlled-access highway. Using gouges in the road surface and skid marks, an accident investigator calculated that appellant could have been backing up on the interstate highway at 3-5 mph at the time of the collision. The investigator also deduced from the post-collision condition of the filament of the back-up lights on appellant's car that they were illuminated at the time of impact. The emergency room physician who treated appellant testified that appellant told him that he had "been backing up his car on the highway when the car was struck from behind." This evidence, coupled with expert medical testimony that appellant's passenger died from injuries sustained in the resulting collision, was sufficient to uphold the verdicts on which the trial court entered judgment, prohibited stopping and second degree vehicular homicide while backing. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

4. During the testimony of the emergency room treating physician, appellant sought a mistrial on the ground that the portion of the emergency room record containing the physician's notes of appellant's inculpatory statement had not been provided appellant despite his request under OCGA § 17-7-211 for copies of all scientific reports to be introduced into evidence.

The "written scientific reports" discoverable under OCGA § 17-7-211 are reports "that would be used as scientific evidence by the prosecution in its case-in-chief or in rebuttal against the defendant." OCGA § 17-7-211 (a). While there are instances in which an emergency room record may include test reports used as scientific evidence by the prosecution (see, e.g., *Paggett v. State*, 188 Ga. App. 174 (372 SE2d 504) (1988) and *Worth v. State*, 183 Ga. App. 68 (2a) (358 SE2d 251) (1987) which involve emergency room examinations of victims of alleged sexual abuse), that is not to say that *every* emergency room record is a scientific report subject to discovery under OCGA § 17-7-211. Appellant's inculpatory statement to the emergency room physician was not scientific evidence used by the prosecution; for that reason, the emergency room record containing the notation of appellant's statement did not constitute a scientific report subject to discovery under OCGA § 17-7-211. Since the physician's testimony was properly admitted, the trial court did not err in denying appellant's motion for mistrial after the State referred to the testimony in closing argument.

5. Appellant sought suppression of statements he made to law enforcement officers after the collision. The transcript of the hearing is not included in the appellate record. Inasmuch as factual and credibility determinations made by the trial court at a suppression hearing must be upheld by the appellate court unless shown to be clearly erroneous (*Mancil v. State*, 177 Ga. App. 663 (340 SE2d 279) (1986)), and the absence of the transcript from the record makes that showing impossible, we must assume as a matter of law that the evidence adduced at the hearing supported the trial court's denial of the motion to suppress. See *Evans v. State*, 166 Ga. App. 602 (305 SE2d 121) (1983).

6. (a) The trial court did not err in charging the jury that "witnesses are not parties and should not be partisans." It was a correct statement of law (*Wilson v. State*, 93 Ga. App. 229 (91 SE2d 201) (1956)), and was made applicable to the case when, during closing argument, counsel for appellant questioned why the State had not called a certain police officer as a witness. Nor was it error to charge that the jury was not responsible for the consequences of its verdict, but only for the truth of the verdict. *Hicks v. State*, 256 Ga. 715 (18) (352 SE2d 762) (1987).

(b) The trial court did not err in instructing the jury that it could find appellant guilty of all five counts contained in the accusation.

Contrary to appellant's assertions, he could be convicted of all five counts. However, he could not be sentenced for all five convictions since some convictions merged. Nor was it error to tell the jury that it must find appellant guilty of prohibited stopping or improper backing before finding him guilty of second degree vehicular homicide, since the underlying traffic offense was an essential element to the vehicular homicide charge. While the conviction for improper backing merged into the vehicular homicide conviction, the prohibited stopping did not merge as it was not the underlying offense for the vehicular homicide for which appellant was sentenced. See *Rank v. State*, 179 Ga. App. 28 (2) (345 SE2d 75) (1986).

(c) The trial court did not err in refusing to give certain charges requested by appellant. One charge, which assumed that the State had alleged that the following driver was not the proximate cause of the accident, was not adjusted to the facts of the case. A requested charge on the "two theories" of evidence was properly rejected since that charge is appropriate only where the evidence is entirely circumstantial and there was direct evidence here. The substance of the remaining rejected charges concerned the rules of the road and was covered by the trial court in its charge.

(d) The trial court did not err in charging on criminal negligence. Such a charge is applicable to vehicular homicide, regardless of the grade of the offense. See *Johnson v. State*, 170 Ga. App. 433 (3) (317 SE2d 213) (1984) (involving first degree vehicular homicide) and *Abernathy v. State*, 191 Ga. App. 350 (2) (381 SE2d 537) (1989) (involving second degree vehicular homicide). That the underlying traffic offense in a charge of second degree vehicular homicide might also constitute reckless driving, thereby elevating the vehicular homicide to one of the first degree, does not make criminal negligence inapplicable to second degree vehicular homicide.

*Judgment affirmed. All the Justices concur.*

DECIDED NOVEMBER 7, 1990.

*Thomas, Kennedy, Sampson, Edwards & Patterson, Paul L. Howard, Jr.,* for appellant.

*Patrick H. Head, Solicitor, Philip M. Goldstein, Beverly M. Hartung, Assistant Solicitors,* for appellee.