S91A1380. CHESTER v. THE STATE.
(414 SE2d 477)

BELL, Justice.

James Chester appeals his convictions of the vehicular homicide of Christy Lamaine and of the malice murder of Darlene Deaton.[1] We affirm.

At about 6:15 p.m. on February 20, 1990, Chester arrived in an El Camino at an apartment complex where his former girl friend, Sandra Davis, lived. Appearing intoxicated, flushed, and very angry, Chester argued with Davis, who earlier that afternoon had told Chester she intended to marry someone else. Chester yelled at Davis that "your f——— a—— has had it." Chester became so abusive that another resident of the apartment complex, Joel Wester, told Chester that he had better leave or Davis was going to call the police. Chester slapped Wester, and said, "Damn women, we ought to kill them all." Chester then left.

Jack Wilbanks, Spencer Smith, and Gary Cooper saw an El Camino speeding down Old Concord Road in Smyrna, Georgia, at approximately 6:45 p.m. The El Camino struck from behind two young women walking in the roadway, Christy Lamaine, age 15, and Darlene Deaton, age 14. Lamaine hit the windshield, flipped off the El Camino, skidded along the pavement, and came to rest in the southbound traffic lane. Deaton flipped onto the hood and then rolled over the top of the truck and into the back cargo area. There was no oncoming traffic, and witnesses did not hear the El Camino skid or blow

---

[1] The crimes occurred on February 20, 1990. Chester was first indicted on April 19, 1990, but was reindicted on July 20, 1990. The jury returned its verdict of guilty on October 9, 1990, and the court sentenced Chester that same day. Chester filed a motion for new trial on November 6. The court reporter certified the transcript on March 9, 1991. The trial court denied Chester's motion for new trial on June 7, 1991, and Chester filed his notice of appeal on June 19. The case was orally argued on September 24, 1991.

its horn. One witness testified that as the El Camino approached the girls it was "revved . . . pretty high" and was exceeding the speed limit. The El Camino continued southbound and stopped at the red light at the intersection with Pat Mell Road. Wilbanks and Cooper pursued the El Camino and wrote down the license tag number, which was later matched to a vehicle registered to Chester's mother.

At about 7:00 p.m., Chester arrived at Al G's Liquor Store on Austell Road and purchased two bottles of peach brandy, counting out exact change for the purchase. The store's clerk and a customer observed extensive damage to the El Camino, including a cracked windshield and smashed headlight. After leaving the store, Chester leaned over the back of the El Camino and adjusted a piece of carpet in the bed of the truck for two or three minutes. Elton McDaniel, who was parked next to the El Camino, thought something was under the carpet.

Emergency personnel at the accident scene found Lamaine's body and parts of a grill and headlight assembly that were later matched to the El Camino. Police searched but were unable to locate Deaton.

According to Davis, Chester called her at about 10:00 p.m. and accused her of breaking his windshield.

The next morning, three police officers arrived at Chester's home. When questioned, Chester replied that he could not remember driving, but that it was possible he had driven because he had blackouts when he drank. When Officer Shelnutt informed him he had hit two girls, Chester appeared surprised but not remorseful and said, "Oh, God. Oh, no." Chester had keys to the El Camino in his pocket. He denied remembering hitting the girls, and only recalled dreaming of a girl lying on some railroad tracks.

At approximately the same time that officers were at Chester's home, investigators located Deaton's body near the abandoned CSX railroad tracks off Cooper Lake Road. Three-quarters of a mile away, officers found Chester's locked truck stuck halfway in a ditch on the gravel roadbed. Deaton's injuries were consistent with being struck by an automobile. A medical examiner testified that Deaton probably lived 30 minutes to an hour after the accident and would have survived if given prompt medical treatment.

1. In his second and third enumerations of error, Chester contends that the evidence is insufficient to support the conviction for the murder of Darlene Deaton. We disagree. Viewing the evidence in a light most favorable to the verdict, there was evidence as follows: At the time of the accident Chester was angry at women, and was speeding and drunk. Although he was drunk, he knew that he struck the two girls, and that Darlene Deaton was in the bed of his truck. Moreover, he knowingly dumped Deaton's body at an isolated, abandoned

railroad track, thus making it highly unlikely that anyone would render aid to Deaton to save her life. Based on these facts, we conclude that a rational trier of fact could have found the implied malice necessary to convict Chester of malice murder. We thus affirm the murder conviction. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. In his first enumeration of error Chester argues the indictment was defective for several reasons and that, because of those defects, the trial court erred in overruling his special and general demurrers to the indictment. We find no error.

The indictment contained two counts that were identical but for the names of the victims, and each count charged Chester with malice murder, OCGA § 16-5-1, and vehicular homicide, OCGA § 40-6-393. The indictment charged Chester

> with the offense of MURDER for the said accused, . . . did unlawfully with malice aforethought, cause the death of [name of decedent], a human being, by striking her with a motor vehicle operated by the accused after said accused had been declared and served as a Habitual Violator under O.C.G.A. § 40-5-58; said act occurring within five years of said declaration, and while his license was in revocation.

(a) Chester argues that the vehicular homicide statute, § 40-6-393, precludes a murder charge in vehicular deaths. We disagree. This issue has been decided adversely to Chester in *Foster v. State*, 239 Ga. 302, 303 (236 SE2d 644) (1977). See also *Anderson v. State*, 254 Ga. 470, 471 (1) (330 SE2d 592) (1985) (holding evidence supported finding of implied malice in vehicular death involving reckless driving).

(b) Chester argues that the indictment improperly joined separate and distinct offenses, i.e., malice murder and vehicular homicide, in the same count of the indictment. We disagree.

> "[I]t is well settled that offenses of the same nature and differing only in degree may be joined in one count in the same indictment; and it is also clearly well settled that offenses not of the same nature, if they constitute but one transaction, may be joined in one count in the same indictment." [*State v. Williams*, 247 Ga. 200, 203 (2) (275 SE2d 62) (1981), quoting *Mitchell v. State*, 6 Ga. App. 554, 556 (65 SE 326) (1909).]

Malice murder and vehicular homicide are offenses of the same nature, in that they are both homicide crimes, and they differ only in degree, in that malice murder requires proof of malice, § 16-5-1 (a, b),

and vehicular homicide does not, § 40-6-393 (a, b, c) Moreover, in this case both the alleged malice murder and vehicular homicide resulted from the same transaction, which was Chester striking and killing the victims while driving with a revoked license.

(c) Another of Chester's contentions concerns language in the indictment that pertains to the offenses of driving after being declared a habitual violator and with a revoked license. Chester argues that the indictment was not perfect in form because it alleged that those offenses could, without more, constitute the elements of malice in malice murder. See *Foster v. State*, supra, 239 Ga. 302. However, we conclude that Chester has misread the indictment, as it did not allege that the vehicular offenses could, by themselves, constitute malice. Instead, the indictment only made one reference to the vehicular offenses, and in that reference merely provided that Chester was operating the vehicle while a habitual violator and while his license was revoked.

3. Chester's fourth and fifth enumerations are predicated on his contention that the "abandoned and malignant heart" language of our implied malice statute, OCGA § 16-5-1 (b), is unconstitutionally vague. However, we conclude that Chester has not carried his burden to adequately raise this constitutional attack.

" 'In order to raise a question as to the constitutionality of a "law," at least three things must be shown: (1) The statute or the particular part or parts of the statute which the party would challenge must be stated or pointed out with fair precision; (2) the provision of the Constitution which it is claimed has been violated must be clearly designated; and (3) it must be shown wherein the statute, or some designated part of it, violates such constitutional provision.' " [*Wallin v. State*, 248 Ga. 29, 30 (1) (279 SE2d 687) (1981) (quoting *DeKalb County v. Post Properties*, 245 Ga. 214, 218 (263 SE2d 905) (1980).]

Although Chester has met the first two requirements of *Wallin*, he has not set forth how the statute is vague and thus in violation of due process. Chester has merely offered an unsupported conclusion that the statute is unconstitutional, and we consider the attack to be insufficient. *Wallin*, supra, 248 Ga. at 30.

4. Chester next contends the trial court erred in failing to charge that criminal negligence cannot form the basis for implied malice.[2] However, viewing the trial court's charge as a whole, particularly its

---

[2] Criminal negligence was relevant to the vehicular homicide charges. *Conyers v. State*, 260 Ga. 506, 509 (6 d) (397 SE2d 423) (1990).

charges on malice and intent, we find that the charge would not have led the jury to believe that criminal negligence could form the basis for a finding of malice.

5. Contrary to Chester's seventh enumeration of error, we conclude the trial court did not err in admitting into evidence a certified copy of a Department of Public Safety record showing Chester's status as a habitual violator. *Smith v. State*, 187 Ga. App. 322 (1) (370 SE2d 185) (1988).

6. In his eighth enumeration of error, Chester contends that, because the copy of his driving record was improperly admitted, there is no evidence to support his conviction of vehicular homicide. However, we have concluded that the certified copy of Chester's driving record was properly admitted, Division 2, supra. Moreover, we conclude that Chester's conviction of vehicular homicide is supported by the evidence. *Jackson v. Virginia*, supra, 443 U. S.

7. In his ninth enumeration of error, Chester contends that the trial court's charge on flight was unconstitutionally burden-shifting; that the permissive inference of guilt that the jury could draw from the flight charge was not rational under the circumstances of this case; and that we should apply retroactively our holding in *Renner v. State*, 260 Ga. 515, 518 (3 b) (397 SE2d 683) (1990). In *Renner*, supra, 260 Ga. at 518, we held that, after the date that opinion was published in the advance sheets of the Georgia Reports (January 10, 1991), it would be error for trial courts to charge on flight in criminal cases. The instant case was tried in October 1990.

We find no merit in this enumeration. First, we have held in numerous cases that the charge on flight is not unconstitutionally burden-shifting. E.g., *Lingerfelt v. State*, 255 Ga. 180, 182 (5) (336 SE2d 250) (1985). Moreover, the evidence in this case would have warranted a rational juror to infer that Renner's flight "was occasioned by a consciousness of guilt." See *Renner*, supra, 260 Ga. at 517. Finally, we decline to apply retroactively the rule announced in *Renner*.

8. The trial court properly admitted evidence concerning three prior accidents that Chester had while driving under the influence. See generally *Maggard v. State*, 259 Ga. 291, 292-293 (2) (380 SE2d 259) (1989).

*Judgment affirmed. All the Justices concur; Sears-Collins, J., not participating.*

WELTNER, Presiding Justice, concurring.

1. (a) In Division 2 (b), the majority relies upon *State v. Williams*, 247 Ga. 200 (275 SE2d 62) (1981) for the proposition that the separate offenses of malice murder and vehicular homicide properly are joined — in a single count of an indictment.

(b) In Division 2 (c), the majority relies upon *Foster v. State*, 239

Ga. 302 (236 SE2d 644) (1977) for the proposition that the indictment did not allege that the vehicular offense could constitute the malice requisite to the offense of murder.

(c) In Division 5, the majority considers the trial court's charge as a whole and concludes that the charge would not have led the jury to believe that criminal negligence could form the basis for a finding of malice.

2. It is an absurd rule that permits in an indictment the conflation of the charges, even though the indictment, by its terms, so alleges. The rule should be changed.

DECIDED MARCH 20, 1992.

*Bert W. Cohen, Jane P. Manning,* for appellant.
*Thomas J. Charron, District Attorney, Debra H. Bernes, Nancy I. Jordan, Assistant District Attorneys, Michael J. Bowers, Attorney General, Mary H. Hines, Staff Attorney,* for appellee.