## A93A0817. REYNOLDS v. THE STATE.
### (434 SE2d 166)

BIRDSONG, Presiding Judge.

Reynolds was tried and convicted of driving under the influence of alcohol, fleeing or attempting to elude a police officer, obstruction of an officer, driving on the wrong side of the road, and possession of an open container of alcohol. His appeal is solely concerned with the conviction for fleeing or attempting to elude a police officer.

Viewing the evidence in the light most favorable to the verdict, it showed that on December 26, 1991, Officer Baker of the City of Aragon Police Department received a complaint that a person was shooting a firearm out the window of a large Ford pickup truck. Baker began driving to the reported location in his marked patrol car to investigate. On his way, he encountered Reynolds' vehicle, which was partially on the wrong side of the road and was traveling at a high rate of speed.

Baker pulled off the road in order to turn his vehicle around and follow Reynolds and he activated the blue patrol lights of his vehicle. In response to this action, Reynolds increased his speed. Baker began to chase Reynolds, who was again on the wrong side of the road. Baker estimated that Reynolds was traveling between 45-60 mph in an area for which the posted speed limit was 30 mph. Although Baker was operating the blue lights of his vehicle, he was not able to activate the siren since the control switch was located on the floor of the vehicle and Baker was concerned that he would lose control of the vehicle if he reached for the switch. Baker did turn on his bright headlights and the "take down" lights, the clear spotlights on the patrol car. During the chase, Reynolds threw a .44 magnum revolver out the window.

Reynolds then pulled over into the driveway of a residence. Baker also stopped and commanded Reynolds to exit his vehicle. Baker than approached Reynolds' vehicle with his gun drawn, and

Reynolds repeatedly yelled to Baker that he could not touch him because he was on private property. Baker eventually pulled Reynolds out of the vehicle to the ground and handcuffed him.

Reynolds testified that although he saw the blue lights and the headlights of the patrol vehicle, he did not realize Baker was pursuing him. He claimed that the glare from Baker's lights caused him to veer onto the wrong side of the road. Reynolds also claimed that he threw the gun from his vehicle because he did not know whether having the weapon in the vehicle was legal. There was no testimony regarding other vehicles on the road that evening. *Held*:

1. In his first enumeration of error, Reynolds contends that the trial court erred in overruling his motion for directed verdict regarding the charge of eluding an officer. He claims that OCGA § 40-6-395 (a) requires that an officer give both an audible and a visual signal before a conviction for eluding an officer is proper. The statute pertinently provides: "It shall be unlawful for any driver of a vehicle willfully to fail or refuse to bring his vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer when given a visual *and* an audible signal to bring the vehicle to a stop. The signal given by the police officer may be by hand, voice, emergency light, *or* siren. The officer giving such signal shall be in uniform prominently displaying his badge of office, and his vehicle shall be appropriately marked showing it to be an official police vehicle." (Emphasis supplied.)

"In all interpretations of statutes, the courts shall look diligently for the intention of the General Assembly, keeping in view at all times the old law, the evil, and the remedy." OCGA § 1-3-1 (a). Unlike OCGA § 40-6-6, whose purpose, inter alia, is to authorize drivers of emergency vehicles to disregard certain rules of the road when operating their emergency vehicle with both audible and visual signals so as to alert the general public of the danger present, OCGA § 40-6-395 (a) has a different and distinct statutory purpose. OCGA § 40-6-395 (a) reflects on its face an unequivocal legislative intent to render unlawful and deter those instances where a driver of a vehicle *wilfully* fails or refuses to bring his vehicle to a stop or otherwise to flee or attempt to elude a pursuing police vehicle or police officer. This is the criminal *conduct* intended to be proscribed and that actually is proscribed by this statute. However, the legislature also sought "to ensure the offense of 'attempting to elude' is not found unless the evidence allows a rational jury to conclude beyond a reasonable doubt that the person fleeing could not reasonably mistake the pursuing police car for something else." *Cook v. State*, 180 Ga. App. 877, 878 (1) (350 SE2d 847). The remaining language in the statute creates a statutory signalling system designed to provide an added safeguard against an ultimate criminal conviction borne of less than wilful con-

duct on the part of the offending driver. The signal system is required to be initiated by the pursuing police and is not part of the *criminal conduct* that is statutorily proscribed.

To require both a visual and an audible signal, rather than just one recognizable signal of either type, serves no meaningful legislative purpose and in fact lends itself, as is evidenced by the facts of this case, to results legally absurd. If one recognizable signal is given by the police, either visually or audibly, the giving of a second does not per se provide any greater assurance of actual recognition during hot pursuit. How many recognizable signals are needed to guarantee driver recognition — one, two, fifty?

Although criminal statutes must be strictly construed, they must first be construed consistent with genuine legislative intent and in a manner which avoids absurd and contradictory results (compare *Mansfield v. Pannell*, 261 Ga. 243 (404 SE2d 104) with *Mansfield v. Pannell*, 194 Ga. App. 549 (390 SE2d 913)). We accept the mantle of that duty today and conclude that the true and rational intent of the legislature was to require only one form of recognizable signal, either visual *or* audible. Supporting this interpretation is the language contained in the second and separate sentence of OCGA § 40-6-395 (a): "The signal given by the police officer may be by hand, voice, emergency light, *or* siren." (Emphasis supplied.) While our specially concurring colleagues, relying on somewhat technical but nevertheless legitimate rules of legislative construction, would reach a differing interpretation of legislative intent, we believe sounder practice is to analyze the evil the legislature intended to proscribe and thereafter accord the statute a more meaningful and realistic interpretation. Did the legislature intend that a driver could wilfully speed away after the police activated their blue lights (thereby creating the necessity for a dangerous pursuit), throw a weapon out the car window while fleeing, and, overwhelming evidence of *wilful* criminal conduct notwithstanding, be deemed *not* to have acted unlawfully merely because the police officer (in this case due to safety considerations) failed to activate an audible signal too? In our view, such a statutory interpretation would lead to a dangerous result.

As to this particular defendant, however, the judgment of conviction must be reversed. As a fair risk cannot be excluded (due to the *unexplained* ambiguity appearing in the face of the statute at the time of the offense) that appellant could have labored under a mistaken belief that merely because a second signal was not given he was free wilfully to elude police pursuit without fear of criminal sanction, his conviction for this offense must be set aside. Cf. OCGA § 16-1-2 (3). " 'Due process mandates that criminal laws give adequate warning of what conduct will constitute a crime.' " *Conyers v. State*, 260 Ga. 506 (1) (397 SE2d 423). At the time of appellant's offense neither

the legislature nor the judiciary had provided the general public with the requisite warning.

Hopefully, as soon as politically practicable, the legislature will re-examine OCGA § 40-6-395 (a) and attempt to strike a reasonable and meaningful balance between the competing societal interests here at issue. Eluding the police is a dangerous activity: dangerous for the police, dangerous for the eluding driver, and particularly dangerous to innocent third-party bystanders who can be killed or seriously injured under circumstances frequently leaving them or their heirs with major indebtedness and no realistic means of obtaining compensation. See, e.g., *Banks v. Patton*, 202 Ga. App. 168 (413 SE2d 744). OCGA § 40-6-395 (a) should be re-promulgated to proscribe and deter intentional acts of eluding the police; any accompanying statutory signal system should be capable of satisfying the tests of common sense, reasonability, and effectiveness when employed in real-world, law enforcement situations.

2. In view of our disposition in Division 1 above, we need not address appellant's remaining enumeration of error.

*Judgment affirmed in part and judgment of conviction for fleeing or attempting to elude reversed. Pope, C. J., McMurray, P. J., Cooper and Blackburn, JJ., concur. Beasley, P. J., Andrews and Smith, JJ., concur specially. Johnson, J., not participating.*

ANDREWS, Judge, concurring specially.

Although I agree that Reynolds' conviction should be reversed, I disagree with the majority's interpretation of OCGA § 40-6-395 (a). The statute requires that an officer give both an audible and a visual signal before a conviction for eluding an officer is proper.

Although the first and second sentences of the statute *can* be interpreted to be contradictory, there is also an equally valid interpretation which presents no ambiguity. "Where there is an apparent conflict between different sections of the same statute, the duty of a court is to reconcile them, if possible, so as to make them consistent and harmonious with one another." *Board of Trustees &c. v. Christy*, 246 Ga. 553, 555 (1) (272 SE2d 288) (1980). In this instance, the unambiguous interpretation of the statute is that the second sentence simply defines the alternative methods in which the visual *and* audible signals may be given. In other words, the visual signal may be by hand *or* emergency light *and* the audible signal may be by voice *or* siren.

Furthermore, even if the two sentences are read so as to create an ambiguity, Reynolds' conviction must be reversed. In light of the ambiguity, we are mindful that "[c]riminal statutes must be construed strictly against the State and in favor of the accused." *Palmer v. State*, 260 Ga. 330, 331 (393 SE2d 251) (1990). The purpose of OCGA

§ 40-6-395 (a) "is to ensure the offense of 'attempting to elude' is not found unless the evidence allows a rational jury to conclude beyond a reasonable doubt that the person fleeing could not reasonably mistake the pursuing police car for something else." *Cook v. State*, 180 Ga. App. 877, 878 (1) (350 SE2d 847) (1986). The inclusion of the word "and" in the first sentence of the statute indicates that the legislature intended that both signals were necessary to effect this purpose. See generally *Reed v. State*, 205 Ga. App. 209 (1) (422 SE2d 15) (1992) (fact that the indictment alleging violation of OCGA § 40-6-395 contained "or" and not "and" was not fatal because the indictment was amended at trial). Prior to the 1990 revision of the statute, effective January 1, 1991, the first sentence of the statute contained the word "or" instead of the current "and." The change, requiring even more certain and unambiguous notification that the person must stop than had been required before the change, was made at the same time that the legislature escalated the category of this crime from a misdemeanor to a misdemeanor of a high and aggravated nature. Ga. L. 1990, pp. 2048, 2321, § 5. The change was deliberate.

Accordingly, I conclude that the conviction for eluding an officer should be reversed because of the absence of an audible signal.

I am authorized to state that Presiding Judge Beasley and Judge Smith join in this special concurrence.

DECIDED JULY 16, 1993.

*Johnny R. Pannell*, for appellant.
*George C. Turner, Jr., District Attorney, Jeffrey L. Ballew, Assistant District Attorney*, for appellee.

