319 Ga. 607
FINAL COPY

S24A0749. THE STATE v. NEWSOM.

BOGGS, Chief Justice.

A Georgia State Patrol trooper observed Christopher James Newsom complete an illegal left turn into the right lane of Georgia Highway 61 southbound and pulled Newsom over. The trial court ruled that OCGA § 40-6-120 (2) (B), the statute the trooper observed Newsom violate, is unconstitutionally vague as applied to Newsom under the Due Process Clause of the Fourteenth Amendment to the United States Constitution, and dismissed an accusation filed against Newsom arising out of the traffic stop. On appeal, the State contends that OCGA § 40-6-120 (2) (B) is not unconstitutionally vague; that the trial court erred by examining whether the traffic stop underlying the accusation in this case was supported by probable cause, instead of asking whether the trooper had reasonable suspicion for the stop; and that even if the statute is vague, the trooper made a reasonable mistake of law such that the

stop was lawful.

We hold that OCGA § 40-6-120 (2) (B) as applied to Newsom does not violate the Due Process Clause of the Fourteenth Amendment. The statute provides clear notice to a driver making a left turn that he must complete the turn in the far-left lane. Furthermore, our ruling in the State's favor makes it unnecessary to reach other arguments that the parties make. We reverse.

The material facts are undisputed. On November 9, 2019, Newsom was driving westbound on U.S. Highway 78. Newsom entered the sole left-turn lane on U.S. Highway 78 as he approached Georgia Highway 61. Georgia Highway 61 has a northbound portion made up of two lanes traveling north and a southbound portion consisting of two lanes traveling south. A median wider than 30 feet separates the southbound and northbound lanes.

Newsom turned left onto Georgia Highway 61 southbound. He completed the turn into the right lane of Georgia Highway 61 southbound. A trooper observed Newsom end the turn in the right lane and initiated a traffic stop. The trooper later determined that

Newsom was driving under the influence of alcohol.

The State filed an accusation charging Newsom with DUI less safe, DUI per se, and improper turn at an intersection. Newsom filed a "Motion to Suppress and Motion in Limine," in which he argued that OCGA § 40-6-120 (2) (B) is unconstitutionally vague "for the same reasons" that this Court invalidated a previous version of OCGA § 40-6-120 (2) (B) in *McNair v. State*, 285 Ga. 514 (678 SE2d 69) (2009); he further argued that the area where he turned included multiple "intersections" within the meaning of Title 40, so it was unclear at which intersection he had to comply with OCGA § 40-6-120 (2) (B), or whether he had to comply with OCGA § 40-6-120 (2) (B) in areas where crosswalks or stop lines crossed. The motion did not specify whether he was raising his claim under the United States or Georgia Constitution.[1] Furthermore, Newsom argued that because OCGA § 40-6-120 (2) (B) is unconstitutionally vague, the trooper pulled him over illegally. Newsom's argument rested on the

---

[1] As explained below, because Newsom makes no specific argument about the Georgia Constitution, our holding in this case is based solely on the United States Constitution.

3

assumption that if a statute is unconstitutionally vague, a traffic stop pursuant to that vague statute would be unlawful. The State subsequently filed an amended accusation alleging the same charges, and the trial court held a hearing on Newsom's motion. At the end of the hearing, the trial court orally ordered:

> I'm going to grant the motion based on it being — when you read it in conjunction with [OCGA §] 40-6-40, I don't think a reasonable person can understand what they're trying to do. [OCGA §] 40-6-40 says all vehicles need to be driven to the right of the center when it's four lanes or more permitting traffic on each side including movement of traffic unless there's a traffic control device designating certain lanes to the left of center — there's no marking on the road and there's nothing that shows me that that left lane is suggesting that you need to stay in the left lane. So I think it is vague and the driver doesn't know what they're supposed to do. So I'll grant the motion.

The trial court implicitly treated Georgia Highway 61 as a single roadway within the meaning of Title 40 when it noted that OCGA § 40-6-40 (c) generally prohibits driving "to the left of the center of the roadway." That statute, the trial court ruled, is inconsistent with OCGA § 40-6-120 (2) (B)'s command to exit an intersection in the left lane of traffic traveling in the same direction on the roadway onto

4

which the driver turned. Moreover, the trial court's written order stated, in part, "[T]his Court has determined that the traffic stop from which this matter originated was conducted by law enforcement without Probable Cause and thus this Court also: orders and adjudges that this accusation and charges be forever dismissed." The record from the trial court hearing and the written order that memorialized the trial court's ruling show that the trial court, like Newsom, assumed that a stop pursuant to an unconstitutionally vague statute would be unlawful. Moreover, the trial court did not clarify in its oral ruling or written order whether it was applying the United States or Georgia Constitution. The State appealed to the Court of Appeals. See OCGA § 5-7-1 (a) (1), (4). The Court of Appeals transferred the case here, recognizing that this Court has exclusive appellate jurisdiction over cases involving novel constitutional challenges to statutes. See Ga. Const. of 1983, Art. VI, Sec. VI, Par. II.

The State argues that the trial court erred in concluding that OCGA § 40-6-120 (2) (B) is unconstitutionally vague. We agree.

5

The Due Process Clause of the Fourteenth Amendment to the United States Constitution "prohibits the government from taking away someone's life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Daddario v. State*, 307 Ga. 179, 188 (835 SE2d 181) (2019) (cleaned up). "Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." *Smallwood v. State*, 310 Ga. 445, 447 (851 SE2d 595) (2020) (cleaned up). Here, Newsom raises only an as-applied challenge to OCGA § 40-6-120 (2) (B) under the United States Constitution based on the statute's alleged failure to provide fair notice.[2]

---

[2] Newsom's arguments focus on the facts at hand here, which show that he argues the statute is unconstitutional as applied to him. In any event, to the extent that Newsom does raise a facial challenge, such a challenge necessarily fails because his as-applied challenge fails. See *Smallwood*, 310 Ga. at 448 (noting that "for a court to reach a facial challenge, a challenger must be able to successfully bring an as-applied challenge"). Additionally, because Newsom does not argue that the statute is unconstitutionally vague under the Georgia Constitution, we analyze the statute under the United States Constitution only. See id. at 447 n.2 (declining to analyze void-for-

OCGA § 40-6-120 (2) (B) states:

> The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of the turning vehicle. Whenever practicable, the left turn shall be made to the left of the center of the intersection and so as to exit the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as the turning vehicle on the roadway being entered.

A previous version of the statute read:

> The driver of a vehicle intending to turn left shall approach the turn in the extreme left-hand lane lawfully available to traffic moving in the direction of travel of such vehicle. Whenever practicable, the left turn shall be made to the left of the center of the intersection and so as to leave the intersection or other location in the extreme left-hand lane lawfully available to traffic moving in the same direction as such vehicle on the roadway being entered.

OCGA § 40-6-120 (a) (2) (effective until 2010).

---

vagueness argument under the Georgia Constitution where the defendant "cite[d] in passing the due process clause of the Georgia Constitution" but made "no separate argument and cite[d] no cases regarding the Georgia Constitution"). See also *Rockdale County v. U.S. Enterprises*, 312 Ga. 752, 761 n.10 (865 SE2d 135) (2021). Finally, Newsom makes no argument about arbitrary enforcement, so we do not consider that aspect of the vagueness analysis. Compare *Smallwood*, 310 Ga. at 446-450 (addressing fair-warning and arbitrary-and-discriminatory-enforcement where the defendant raised arguments as to each).

In 2010, among other changes not relevant here, the General Assembly amended the former statute to use the word "exit" instead of "leave." See Ga. L. 2010, p. 256, § 1.

OCGA § 40-6-120 (2) (B) is not unconstitutionally vague as applied to Newsom, under the Due Process Clause of the Fourteenth Amendment. In *McNair*, 285 Ga. at 515-517, we held that the previous version of the statute was unconstitutionally vague because a driver making a left turn would not know in which lane he should "leave" an intersection. See id. (concluding that OCGA § 40-6-120 (a) (2) (effective until 2010) was "too vague to be enforced against . . . a driver of a vehicle making a left turn into a multi-lane roadway that lacks official traffic-control devices directing the driver into which lane to turn"). *McNair* reasoned that the previous version failed to provide clear notice based on the interplay between the word "leave" and the rest of the statutory language. See id. When the word "leave" was read together with the rest of the statute, the previous version could have two, diametrically opposed meanings. See id. See also OCGA § 40-6-120 (a) (2) (effective until 2010)

8

(providing that "the left turn shall be made to the left of the center of the intersection and so as to *leave* the intersection or other location in *the extreme left-hand lane lawfully available to traffic moving in the same direction* as such vehicle on the roadway being entered" (emphasis supplied)). The former statute could have required a driver to "move into the right lane and leave the extreme left-hand lane available to other vehicles so they can travel unencumbered by the turning vehicle's presence," or it could have commanded a driver to do the opposite: "to exit, i.e., leave, the intersection or other location while the turning vehicle then proceeds to travel in the extreme left-hand lane lawfully available to traffic moving in the same direction." *McNair*, 285 Ga. at 515-517. In short, *McNair* concluded that the use of the word "leave" and its interaction with the other statutory language gave two conflicting directions to drivers. See id.

By contrast, the current version of the statute is not so vague that it violates due process. The current version of the statute eliminates the first possible meaning that *McNair* identified,

9

because the current version cannot be interpreted to mean that a driver making a left turn must permit the left lane to remain open. Compare OCGA § 40-6-120 (a) (2) (effective until 2010). Moreover, Newsom does not point to any other contradictory meaning that the current version could have; indeed, in his brief he specifies that "the relevant current statutory provision remains void for vagueness for the same reasons analyzed in *McNair*."

The current version of the statute has been amended to substitute "exit" for "leave." See Ga. L. 2010, p. 256, § 1. That change is material because that portion of the current version no longer suffers from multiple possible meanings. Contemporaneous dictionaries consistently define "exit" as meaning to depart from a place. See, e.g., The American Heritage Dictionary of the English Language (5th ed. 2011) ("[t]o make one's exit; depart"); New Oxford American Dictionary (3d ed. 2010) ("go out of or leave a place"); The American Heritage Dictionary of the English Language (4th ed. 2000) ("[t]o make one's exit; depart"). See also *Conyers v. State*, 260 Ga. 506, 506 (397 SE2d 423) (1990) (consulting dictionary definition

10

to decide whether the statute at issue defined "the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited" (cleaned up)). OCGA § 40-6-120 (2) (B)'s statutory text provided clear direction to Newsom here. First, he had to complete his turn in a lane that moved traffic in the same direction he was driving. See OCGA § 40-6-120 (2) (B) (requiring a driver to turn consistently with "traffic moving in the same direction as the turning vehicle on the roadway being entered"). Plainly, he was not permitted to drive into oncoming traffic. See id. Furthermore, Georgia Highway 61 southbound has two lanes going south, so OCGA § 40-6-120 (2) (B)'s text required Newsom to "exit the intersection" — that is, complete his turn and travel away from the place where Georgia Highway 61 southbound and U.S. Highway 78 meet — in the left lane of Georgia Highway 61 southbound. Id. He could not use the right lane. See id. Unlike the previous version of the statute, nothing about the current statutory language suggests that a driver should occupy the right lane when completing a turn. Compare OCGA § 40-6-120 (a) (2) (effective until 2010).

11

Additionally, this clear direction is consistent with OCGA § 40-6-120 (2) (C) when read in context. See *Payne v. State*, 275 Ga. 181, 183-184 (563 SE2d 844) (2002) (reading a statute in context when considering a vagueness challenge); *Steele v. State*, 260 Ga. 835, 836 (400 SE2d 1) (1991) ("conclud[ing] that the statute, when read in its entirety," was not unconstitutionally vague); *Bilbrey v. State*, 254 Ga. 629, 631 (331 SE2d 551) (1985) ("While [the statute at issue] standing alone does not meet the constitutional certainty requirements, we find the statute furnishes sufficient criteria when read in conjunction with" another statute in the same title.). OCGA § 40-6-120 (2) (C), which immediately follows OCGA § 40-6-120 (2) (B), requires a driver making a left turn at an intersection with multiple left turn lanes to

> exit the intersection in the same relative travel lane as the vehicle entered the intersection. If the vehicle is in the second extreme left-hand lane entering the intersection, the vehicle shall exit the intersection in the second extreme left-hand lane. Where there are multiple lanes of travel in the same direction safe for travel, a vehicle shall not be permitted to make a lane change once the intersection has been entered.

12

OCGA § 40-6-120 (2) (C). Both OCGA § 40-6-120 (2) (B) and (C) require a driver making a left turn to start and end that turn in the left lane.

Finally, tools of statutory interpretation that we commonly use further support our conclusion. When interpreting statutes, we presume that the General Assembly "enact[s] statutes with full knowledge of existing law, including court decisions." *McIver v. State*, 314 Ga. 109, 120 (875 SE2d 810) (2022) (cleaned up). Similarly, "it is a core principle of statutory interpretation that changes in statutory language generally indicate an intent to change the meaning of the statute." Id. (cleaned up). One of the possible meanings that *McNair* attributed to the former statute was that it "requir[ed] the driver making the left turn to *exit*, i.e., leave, the intersection or other location while the turning vehicle then proceeds to travel in the extreme left-hand lane lawfully available to traffic moving in the same direction." 285 Ga. at 517 (emphasis supplied). In the 2010 amendment, the General Assembly used the same word, "exit." See Ga. L. 2010, p. 256, § 1. Such a textual change

signals an intent to change the statute's meaning. See *McIver*, 314 Ga. at 120. And the change is material because the portion of the statute at issue here no longer has the multiple, contradictory meanings to which *McNair* pointed: only the single, clear meaning that we identified above.

In summary, the language of OCGA § 40-6-120 (2) (B) provided clear notice to Newsom that he was required to complete his turn in the left lane of Georgia Highway 61 southbound. See OCGA § 40-6-120 (2) (B). That clear notice is consistent with other portions of the statute when read in context, see OCGA § 40-6-120 (2) (C), and confirmed by ordinary tools of statutory interpretation. See *McIver*, 314 Ga. at 120. Accordingly, OCGA § 40-6-120 (2) (B) as applied to Newsom is not void for vagueness under the Due Process Clause of the Fourteenth Amendment.

Nonetheless, the trial court determined that OCGA § 40-6-120 (2) (B) is unconstitutionally vague when read in conjunction with OCGA § 40-6-40 (c), reasoning that the statutes provide conflicting directions to a driver. Pretermitting whether the conflict the trial

court believed existed between OCGA §§ 40-6-120 (2) (B) and 40-6-40 (c) *could* render OCGA § 40-6-120 (2) (B) unconstitutionally vague, we conclude that the trial court erred in determining that there *was* a conflict. OCGA § 40-6-40 (c) provides:

> Upon any roadway having four or more lanes for moving traffic and providing for two-way movement of traffic, no vehicle shall be driven to the left of the center of the roadway except when authorized by official traffic-control devices designating certain lanes to the left of the center of the roadway for use by traffic not otherwise permitted to use such lanes or except as permitted under paragraph (2) of subsection (a) of this Code section. However, this subsection shall not be construed as prohibiting the crossing of the center of the roadway in making a left turn into or from an alley, private road, or driveway.

As explained above, the trial court implicitly ruled that Georgia Highway 61 should be considered a single roadway when it stated:

> [OCGA §] 40-6-40 says all vehicles need to be driven to the right of the center when it's four lanes or more permitting traffic on each side including movement of traffic unless there's a traffic control device designating certain lanes to the left of center. . . . So I think it is vague and the driver doesn't know what they're supposed to do.

However, as the State correctly points out, because Georgia

15

Highway 61 is a type of highway, not a single roadway, OCGA § 40-6-40 (c) does not apply here. A "[r]oadway" refers to "that portion of a highway improved, designed, or ordinarily used for vehicular travel, exclusive of the berm or shoulder. *In the event a highway includes two or more separate roadways*, the term 'roadway' shall refer to *any such roadway separately*, but not to all such roadways collectively." OCGA § 40-1-1 (53) (2019) (emphasis supplied). By contrast, a "[h]ighway" is "the entire width between the boundary lines of every way publicly maintained when any part thereof is open to the use of the public for purposes of vehicular travel." OCGA § 40-1-1 (19) (2019).[3] For example, both the northbound and southbound lanes of Georgia Highway 61 form one highway. As these definitions make clear, that highway has two roadways: the lanes going north form one roadway, and the lanes going south make up another. See OCGA § 40-1-1 (53) (2019). More specifically, Georgia Highway 61

---

[3] If the statutes at issue have been amended since Newsom's alleged offenses, we cite the versions in effect at the time. See *Widner v. State*, 280 Ga. 675, 677 (631 SE2d 675) (2006) ("A crime is to be construed and punished according to the provisions of the law existing at the time of its commission." (cleaned up)).

16

as it existed at the time of the stop in question here was a "[d]ivided highway," consisting of two roadways, because it was "a highway divided into two or more roadways by leaving an intervening space or by a physical barrier or by a clearly indicated dividing section so constructed as to impede vehicular traffic." OCGA § 40-1-1 (13) (2019). See also OCGA § 40-1-1 (53) (2019).

Other provisions of Title 40 confirm that one highway can have multiple roadways. See, e.g., OCGA § 40-1-1 (22) (B) (2019) ("Where a highway includes two roadways 30 feet or more apart, then every crossing of each roadway of such divided highway by an intersecting highway shall be regarded as a separate intersection."); OCGA § 40-6-50 (b) (requiring vehicles on a divided highway to be "driven only upon the right-hand roadway" and prohibiting vehicles from being "driven over, across, or within any dividing space, barrier, gore, paved shoulder, or section separating the roadways of a divided highway"); OCGA § 40-6-163 (b) (2019) ("The driver of a vehicle upon a highway with separate roadways that are separated by a grass median, unpaved area, or physical barrier need not stop upon

17

meeting or passing a school bus which is on the separate roadway[.]"); OCGA § 40-6-203 (a) (1) (J) (prohibiting stopping, standing, or parking a vehicle "[i]n the area between roadways of a divided highway"). In short, contrary to the trial court's treatment of Georgia Highway 61 as a single roadway, OCGA § 40-6-40 (c) does not apply to Georgia Highway 61 as a whole. See OCGA § 40-1-1 (53) (2019). Nor does it apply to Georgia Highway 61's individual roadways. OCGA § 40-6-40 (c) applies only to a "roadway having four or more lanes for moving traffic and providing for two-way movement of traffic." However, each of Highway 61's roadways consists of two lanes that move traffic in the same direction. Because OCGA § 40-6-40 (c) does not apply here, the trial court erred in concluding that it could render OCGA § 40-6-120 (2) (B) unconstitutionally vague as applied to Newsom.

Newsom further argues that OCGA § 40-6-120 (2) (B) is unconstitutionally vague when read in context with the definition of "intersection" in Title 40. See OCGA § 40-1-1 (22) (B) (2019). According to Newsom, the area where he turned has multiple

18

intersections, so it is not clear at which intersection OCGA § 40-6-120 (2) (B) governed his conduct, or whether OCGA § 40-6-120 (2) (B) controlled his actions in areas where crosswalks and stop lines crossed each other.

The trial court did not rule on this argument below because it concluded that OCGA § 40-6-120 (2) (B) is unconstitutionally vague when read in conjunction with OCGA § 40-6-40 (c). Because we reject that conclusion now, we leave it for the trial court to address this argument in the first instance on remand.[4]

---

[4] The trial court also concluded that "the traffic stop from which this matter originated was conducted by law enforcement without Probable Cause" and used this probable-cause conclusion as a means to effectuate its vagueness ruling. Specifically, the trial court concluded that, because in its estimation OCGA § 40-6-120 (2) (B) was unconstitutionally vague, the officer necessarily lacked probable cause to stop Newsom pursuant to the statute:

> STATE: I was also asking on the record if her ruling today would suppress the probable cause for the stop, which would deal with the sole reason of the stop — the improper left-hand turn.
> TRIAL COURT: Yes.
> DEFENSE COUNSEL: Thank you.
> TRIAL COURT: I mean, that was the sole reason for the stop; right?
> STATE: Right, Your Honor.

We have already concluded that the statute is not unconstitutionally vague and that the trial court erred in suppressing the evidence or otherwise dismissing the charges on that basis. Because any argument Newsom made below with respect to a lack of reasonable suspicion to justify a traffic stop was

19

*Judgment reversed and case remanded. All the Justices concur.*

---

inextricably linked to his contention that the statute was unconstitutionally vague and because the trial court offered no independent reason in support of its conclusion that the stop was unconstitutional, that aspect of the trial court's ruling necessarily falls along with its vagueness conclusion. And in any event, had there been an independent legal challenge to the standard the officer used in stopping Newsom after his turn, the correct legal standard would have been reasonable suspicion, not probable cause. See *Jones v. State*, 291 Ga. 35, 38 (727 SE2d 456) (2012). See also *Kansas v. Glover*, 589 U.S. 376, 380 (140 SCt 1183, 206 LE2d 412) (2020); *Heien v. North Carolina*, 574 U.S. 54, 60 (135 SCt 530, 190 LE2d 475) (2014); *Navarette v. California*, 572 U.S. 393, 396 (134 SCt 1683, 188 LE2d 680) (2014). Because probable cause is a more stringent standard than reasonable suspicion, probable cause *can* justify a traffic stop. But unlike the trial court's suggestion, probable cause is not required. See *Rodriguez v. United States*, 575 U.S. 348, 365-366 (135 SCt 1609, 191 LE2d 492) (2015) (Thomas, J., dissenting).

Moreover, citing *Heien*, 574 U.S. at 60, the State argues that even if OCGA § 40-6-120 (2) (B) is unconstitutionally vague, the trooper made a reasonable mistake of law in believing that Newsom violated the statute. Based on our holding reversing the trial court's ruling against the State and because the State may have waived this argument by failing to raise it below, we do not reach this issue.

Decided August 13, 2024.

OCGA § 40-6-120 (2) (B); constitutional question. Carroll State Court. Before Judge Tisinger.

*Rebecca L. Jackson, Solicitor-General, Robert L. Hunnicutt, Assistant Solicitor-General; Christopher M. Carr, Attorney General, Beth A. Burton, Deputy Attorney General, Clint C. Malcolm, Meghan H. Hill, Senior Assistant Attorneys General*, for appellant.

*The Pilgrim Law Group, Jerry M. C. Pilgrim*, for appellee.