On the former appearance of this case (*Jones v. American Tire Co. of Buckhead,* 210 *Ga.* 110, 78 S. E. 2d 25), it was held that the petition stated a cause of action for the appointment of a receiver and injunctive relief as against the general demurrers. Subsequently to the order overruling the demurrers (May 20, 1953), the judge of the superior court passed an order wherein it was recited that, it appearing to the court that the defendants had posted a bond to indemnify the plaintiff, the receivership was dissolved upon the payment of certain receivership fees. Thereafter the judge of the superior court entered a judgment against the principals and the surety named in the bond, without the intervention of a jury, and the exception is to that judgment.

18490. HILBURN, by Guardian, *v.* HILBURN.

ARGUED FEBRUARY 9, 1954—DECIDED MARCH 9, 1954—
REHEARING DENIED MARCH 23, 1954.

*Russell G. Turner, Jack P. Turner,* for plaintiff in error.

*James C. Howard, Howard & Harmon,* contra.

CANDLER, Justice. (After stating the foregoing facts.) 1. By an act of the General Assembly of 1946 (Ga. L. 1946, p. 90), a verdict or judgment for divorce and permanent alimony does not become final for thirty days; and, during that period, upon application in writing by an interested person, it may be modified or set aside for good and sufficient cause. Code (Ann.) § 30-101; *Lloyd* v. *Lloyd,* 208 *Ga.* 694 (69 S. E. 2d 251). In the instant case, the motion alleges that the verdict and judgment should be vacated and set aside for the reasons appearing in our statement of the case, and those grounds of the motion will be dealt with and disposed of in the succeeding divisions of this opinion.

2. Respecting divorce and as the movant's ground for vacating and setting aside the verdict and judgment, it is alleged that they should be vacated and set aside because they are contrary to law, the evidence, and the principles of justice and equity. As to this question, the evidence goes back to the marriage in 1938, and is therefore voluminous. It would require, and we

think needlessly so, the use of many pages to record even briefly the details of the many controversies between the parties; but they were, as the record shows, principally about an expenditure of their separate earnings. Assuming, but not holding, that their prior marital controversies were not condoned by the husband, they, nevertheless, did not amount to cruel treatment. "Cruel treatment" within the meaning of Code § 30-102, which provides for divorce, is the wilful infliction of pain, bodily or mental, upon the complaining party, such as reasonably justifies an apprehension of danger to life, limb, or health. Petulance, rudeness, and occasional sallies of passion are not cruel treatment. *Myrick* v. *Myrick*, 67 *Ga.* 771; *Stoner* v. *Stoner*, 134 *Ga.* 368 (67 S. E. 1030). These unpleasant similar occurrences frequently arise even among those couples happily married. But in the instant case Mr. Hilburn contends and testified that his wife made an attack upon him on September 24, 1945, by seizing his genital organs and thereby inflicting severe pain. "As a general rule, a single act of personal violence is not considered cruel treatment, but two or more such acts alone may furnish ground for divorce." *Phinizy* v. *Phinizy*, 154 *Ga.* 199 (2c) (114 S. E. 185). Neither Mr. Hilburn nor any other witness testified to any other act of violence committed upon him by Mrs. Hilburn during the seven years of their married life. However, as to the act complained of, which Mr. Hilburn contends amounted to cruel treatment, the evidence shows that Mrs. Hilburn was at the time of its commission unquestionably an insane person, and was soon thereafter committed to the Milledgeville State Hospital upon an adjudication that she was a person of unsound mind. There she remained until 1950, and since then she has been continuously confined by her guardian in other institutions for insane persons. Through the recommendation of the American Red Cross and because of Mrs. Hilburn's insanity and her consequent prior confinement in an institution for people of unsound mind, Mr. Hilburn was returned to the States from foreign military service during January 1945. Concerning her mental condition on his return and at an interlocutory hearing of her petition in the present case for temporary alimony, he testified that she had been confined in a mental institution while he was away; that she was having hallucinations or mental disturbances upon his

return; and that she has had them continuously since. Looking at the evidence as a whole, we think it demanded a finding by the jury that Mrs. Hilburn was an insane person on September 24, 1945; and it is well settled that an insane person cannot commit wilful acts which amount to cruel treatment within the meaning of our divorce statute. Without the element of wilfulness, there can be no cruel treatment which will authorize the grant of a divorce upon that ground. Code § 30-102; *Ring* v. *Ring*, 118 *Ga.* 183 (1) (44 S. E. 861). This ground of the motion, as elaborated by the second ground, has substantial merit and should have been sustained by the trial judge.

3. Alimony, being an allowance out of the husband's estate which the court on application therefor makes for the support of the wife when living separate from him, should be adjusted to the wife's necessities and consistent with the husband's ability to pay it. Code Chapter 30-2; *Jenkins* v. *Jenkins*, 69 *Ga.* 483. It should never be excessive, and, with proper regard for the husband's ability, it should never be inadequate or insufficient for his wife's support in keeping with the family standard of living established by the husband. This court has frequently refused to approve an award for alimony which was excessive; it will likewise decline to approve one which is inadequate and insufficient to meet the necessities of the wife, the husband's ability to comply with his marital obligation to her for support appearing. *Robertson* v. *Robertson*, 207 *Ga.* 686 (63 S. E. 2d 876), and the several cases there cited. In the case at bar, the jury found from the evidence that Mrs. Hilburn was entitled to permanent alimony, and the motion alleges that the verdict and judgment for such alimony should be vacated and set aside because the amount found therefor is grossly inadequate and insufficient for her support, her necessities and his ability to pay alimony being considered; and, after carefully looking at the evidence brought up in the record, we have reached the conclusion that it is, and that the motion should have been granted on this ground. And this is so because of the following facts which are not disputed: Mrs. Hilburn, because of mental illness, left her employment with the Southern Bell Telephone & Telegraph Company on March 4, 1944, after working with the company continuously for more than sixteen years. She was in and out of private institu-

tions for care and treatment as a mental defective until she was adjudged insane on April 8, 1946. Following that adjudication, she was committed to the Milledgeville State Hospital where she remained until September 21, 1950. She was removed by her brothers and sisters from the Milledgeville Hospital for a delicate brain operation. Since then she has been continuously confined in the Atlanta Sanitarium as a person of unsound mind. While at the Milledgeville State Hospital, she was cared for and supported by the State, except for small incidental expenses, which her husband, as her guardian, paid from her personal funds. The expenses of her operation, amounting to more than $250, were borne by her sister. Her expenses for hospitalization at the Atlanta Sanitarium amount to $150 per month, which is in addition to an average monthly charge of $75 for medical services and the cost also of necessary clothing and incidentals. She receives a monthly pension of $30 from her former employer, and has personal funds amounting to a total of $1,505.75, which her guardian holds. Mr. Hilburn testified that he had not personally paid any part of her expenses nor furnished any funds for her care and support since September 24, 1945. He also testified that he had personal property, fully paid for, worth $3,500 and that his net income for the six years immediately prior to the date of his testimony was $355 per month, without deduction for taxes. His employer, however, testified that he was paid for salary and expenses from June 1, 1949, to December 31, 1949, a total of $4,766.71; $9,034.48, salary and expenses for 1950; $10,242.23, salary and expenses for 1951; and $5,808.77, salary and expenses from January 1, 1952, through March 22, 1952. He testified that the expenses paid to Hilburn were for food, lodging, laundry and 6.5 cents per mile for the use of his car plus storage and toll charges when away from his headquarters and that such absence was for about eight months out of each year. Hilburn also testified that he had accepted new employment as a salesman with Bainbridge Southern, Incorporated, on a commission basis, but would be advanced $150 per week as salary and expenses. Under these facts, we hold that the verdict which the jury rendered on May 13, 1952, awarding as it did, $80 per month for permanent alimony, was grossly inadequate and insufficient; and being so, the motion to vacate it and set

the judgment aside for that reason should have been sustained. It was erroneous not to do so.

. 4. Ground 4 of the motion alleges that the court erred in failing to charge the jury that only those acts amounting to cruelty which the movant may have committed prior to the date she became insane could be considered by the jury as a ground for divorce. And ground 5 complains of the omission to instruct the jury respecting the legal effect of condonation. These grounds of the motion have, we think, been sufficiently dealt with in the preceding divisions of this opinion, and further consideration of them does not seem to be necessary.

5. It is established and well settled in this State that it is the duty of the trial judge in every case, with or without request, to charge the jury fully and correctly upon all substantial and controlling issues made by the pleadings and the evidence; but, in the absence of a timely written request, his failure to charge upon an incidental or collateral matter is not error. *Patterson* v. *State,* 134 *Ga.* 264 (3), 267 (67 S. E. 816); *Turner* v. *Turner,* 186 *Ga.* 223 (197 S. E. 771, 116 A. L. R. 1396); *Driver* v. *State,* 194 *Ga.* 561 (22 S. E. 2d 83); *Wyatt* v. *State,* 206 *Ga.* 613 (57 S. E. 2d 914); and cases cited. Ground 6 of the motion alleges that the verdict and judgment should be vacated and set aside because the court failed to charge the jury, without request, that alimony awarded to a wife and payable to her periodically is subject to income taxes. As to this contention, we do not agree. Assuming that such a charge would have been correct, the matter referred to was only incidentally or collaterally involved in the case; and the court's failure to give such instruction, in the absence of a proper written request, was therefore not erroneous. Accordingly, good and sufficient cause for vacating and setting the verdict and judgment aside is not shown by this ground of the motion.

6. "When a witness shall be successfully contradicted as to a material matter, his credit as to other matters shall be for the jury, but if a witness shall swear wilfully and knowingly falsely, his testimony shall be disregarded entirely, unless corroborated by circumstances or other unimpeached evidence." Code § 38-1806. Ground 7 of the motion alleges that the verdict and judgment should be vacated and set aside because the judge

omitted so to instruct the jury. There is no merit in this contention. Impeachment of witnesses is a collateral matter; being so, failure to charge upon that subject, in the absence of a timely written request, is not error. *Downing* v. *State,* 114 *Ga.* 30 (3) (39 S. E. 927); *Lewis* v. *State,* 129 *Ga.* 731 (59 S. E. 782); *Turner* v. *State,* 139 *Ga.* 593 (77 S. E. 828); *Douberly* v. *State,* 184 *Ga.* 573 (192 S. E. 223).

7. Since the evidence did not authorize a divorce between the parties and the jury's award of alimony was inadequate, we think and therefore hold that the verdict and judgment should have been vacated and set aside.

*Judgment reversed. All the Justices concur, except Wyatt, P. J., who dissents.*