## A06A2023. HERSH v. GRIFFITH et al.

(643 SE2d 309)

JOHNSON, Presiding Judge.

Shelley Hersh suffered bodily injury when her automobile collided with a house being moved along Roswell Road in Fulton County. She filed suit, naming as defendants William Griffith, the house mover, William Finch and Gary Johnson, two off-duty Fulton County police officers who operated police escort vehicles for the house move, and others not at issue in this appeal. At the close of Hersh's case, Finch and Johnson were each granted a directed verdict on the basis of official immunity. The jury subsequently returned a verdict for Griffith. Hersh appeals, arguing the trial court erred in instructing the jury and in granting Finch's and Johnson's motions for directed verdict. We find no error and affirm.

The evidence in the record shows that Griffith was in the business of moving houses. At approximately 1:00 a.m. on July 9, 1997, Griffith was moving part of a house traveling northbound on Roswell Road with the assistance of Finch and Johnson, officers of the Fulton County Police Department. The house-moving convoy consisted of Griffith's truck, the two officers' police cars, and three other trucks. Griffith's truck and at least two other trucks in the convoy were equipped with flashing amber lights during the move. Finch drove the lead police escort vehicle and operated his flashing blue lights during the move, and Johnson drove the rear police escort vehicle and operated his flashing blue lights during the move.

Hersh, 18 years old at the time, was traveling in the left southbound lane on Roswell Road with three friends in her car. There is a conflict in the evidence regarding whether Hersh's vehicle's headlights were on. Hersh did not alter her course as she approached the convoy, despite the fact that "[e]verybody else pulled over to the right" in response to Finch's flashing blue lights. Finch testified regarding a number of things he did to warn Hersh of the oncoming house-moving convoy, though some of these items are in dispute.[1] When Hersh failed to move her vehicle, Finch moved out of the lane in which he was traveling. Hersh passed Finch's vehicle and struck the front corner of the house, which was protruding into her southbound lane of travel.

■The trial court charged the jury and after deliberating for some time, the jury submitted two questions to the court: "What rules/regulations govern a driver's conduct when confronted by: a police car with flashing blue lights in the center lane; and then the second thing is,

---

[1] Finch testified that he turned his headlights on and off, shined his lights from high beam to low beam and sounded his air horn.

warning/amber lights." Outside the presence of the jury, the trial court engaged in a lengthy discussion with all counsel and charged the jury on OCGA §§ 40-6-2, 40-6-74 and 40-6-6. After this charge, a juror asked the trial court if there was "an answer on the amber light." Outside the presence of the jury, the trial court and counsel again discussed the appropriate response. The trial court then charged the jury: "Folks, in response to the second part of your question regarding amber lights, other than the law that I've already instructed you on, there is no additional law as to amber lights." Hersh's attorney did not make any comment or objection regarding this clarification.

(a) Hersh contends the trial court erred in instructing the jury as to OCGA § 40-6-2, obedience to authorized persons directing traffic, because it was not adjusted to the evidence and not applicable to the case. Hersh specifically argues there was no evidence that Finch gave her a lawful order or direction as contemplated by OCGA § 40-6-2. We disagree.

The trial court charged the jury as follows: "Georgia law as to obedience to authorized persons directing traffic reads as follows: No person shall fail or refuse to comply with any lawful order or direction of any police officer invested by law with, with [sic] authority to direct, control, or regulate traffic." Notwithstanding the other measures possibly taken by Finch to warn or direct Hersh to move her vehicle to the right, the jury heard evidence that Hersh failed to yield the right of way when confronted by a police car with flashing blue lights. The charge was a correct statement of the law in direct response to the jury's question regarding a driver's duty and was tailored to the testimony elicited at trial.

OCGA § 40-6-74 (a) provides that "[u]pon the immediate approach of [a law enforcement vehicle] making use of an audible signal and visual signals . . . the driver of every other vehicle shall yield the right of way and shall immediately drive to a position parallel to, and as close as possible to, the right-hand edge or curb of the roadway." The evidence shows that, unlike the other cars previously encountered during the move, Hersh did not take any action in response to Finch's flashing blue lights. In fact, Finch had to swerve to avoid Hersh's vehicle. The jury was authorized to conclude that Hersh ignored Finch's directive to yield the right of way. The trial court did not err in instructing the jury as to OCGA § 40-6-2.

(b) Hersh argues the trial court erred in instructing the jury as to OCGA § 40-6-74, operation of vehicles upon approach of authorized emergency vehicles, and OCGA § 40-6-6, authorized emergency vehicles. According to Hersh, these statutes were not applicable to the case because (1) Finch was not responding to an emergency call, pursuing an actual or suspected violator of the law, or responding to the fire alarm, (2) Finch's extremely slow-moving police car was not

using a siren and flashing blue lights as it approached Hersh's vehicle, and (3) Finch's police car had already passed Hersh's vehicle when the collision with the house being moved occurred in Hersh's lane of travel. We again disagree.

It is the duty of the trial judge to charge the jury fully and correctly upon all substantial and controlling issues made by the pleadings and evidence.[2] And the trial judge has discretion in supplementing the charge or in giving additional charges to the jury, even after the jury has retired.[3] Here, testimony elicited at trial showed that Finch was operating a police vehicle owned by Fulton County and that he used his blue flashing lights and air horn to communicate with Hersh. The evidence further showed that Finch had to leave his lane of travel because Hersh failed to yield the right of way. OCGA § 40-6-74 specifically applies to the duty of motorists being approached by authorized law enforcement vehicles, and OCGA § 40-6-6 specifically applies to the duties of drivers of law enforcement vehicles to the public. Read together, the statutes mandate that a driver has a duty to yield the right of way to an authorized law enforcement vehicle when it approaches making use of an audible signal and visual signal under normal atmospheric conditions from a distance of 500 feet to the front of such vehicle.

Contrary to Hersh's argument, OCGA § 40-6-6 does not apply only when the authorized law enforcement vehicle is responding to an emergency call, in pursuit of a violator of the law or responding to a fire alarm. The purpose of OCGA § 40-6-6 "is to authorize drivers of emergency vehicles to disregard certain rules of the road when operating their emergency vehicle with both audible and visual signals so as to alert the general public of the danger present."[4] Motorists are not permitted to decide whether they should yield the right of way based on their determination as to whether the law enforcement vehicle is responding to an emergency. The duty of the motorist is constant, so long as the motorist is given an audible and visual signal. Furthermore, contrary to Hersh's argument, the statutes do not restrict an "audible signal" to only sirens. The charge given was a correct statement of the law and was tailored to the evidence at trial. The trial court did not err in instructing the jury as to OCGA §§ 40-6-74 and 40-6-6.

(c) Hersh maintains the trial court erred in failing to allow the parties to present additional argument to the jury after the trial court

[2] See *Hilburn v. Hilburn*, 210 Ga. 497, 503 (5) (81 SE2d 1) (1954).

[3] See *Cox v. Gen. Motors Corp.*, 187 Ga. App. 176, 177 (369 SE2d 525) (1988) (physical precedent only).

[4] *Reynolds v. State*, 209 Ga. App. 628, 629 (1) (434 SE2d 166) (1993).

charged the jury on OCGA §§ 40-6-74 and 40-6-6 because the trial court was under the erroneous impression that the parties could not have an opportunity to argue the new points of law to the jury. However, even assuming that re-argument after the new charges was warranted, Hersh was required to request it.[5] Not having requested re-argument, Hersh "may not complain on appeal that [s]he was irretrievably harmed."[6]

Even if Hersh had not waived this argument, her argument lacks merit. While the trial court noted that the parties had not had an opportunity to argue the new charges and indicated that it was sensitive to the fact that the parties had not had an opportunity to argue the matters, the trial court also indicated that it was sensitive to the danger of overemphasizing the new provisions. The record supports the conclusion that the trial court chose not to allow re-argument so as not to overemphasize the new provisions.

We have previously held that a trial court did not abuse its discretion when it did not allow the defendant to argue to the jury after the court, in response to a jury question, recharged the jury on a point of law.[7] Here, as in *Igidi*, the court's recharge was warranted by the evidence, was legally accurate and was not confusing or misleading. Therefore, Hersh was not necessarily entitled to an opportunity to argue to the jury the new charge. The trial court did not err in failing to allow the parties additional argument after the recharge.

(d) Hersh maintains the trial court erred in "merely telling the jury to consider the instructions previously given in response to the jury's question as to the meaning of amber lights." We find no reversible error.

After the trial court's charge to the jury as to OCGA §§ 40-6-74, 40-6-6 and 40-6-2, a juror asked the trial court if there was "an answer on the amber light." Outside the presence of the jury, the trial court and counsel again discussed the appropriate response:

> THE COURT: What do you all want me to do with [the amber light question]? Do you want me to tell them there's no written law that addresses the amber lights question? . . .
> MR. TUSZYNSKI: I would say, if we are going to use the approach of clarification, that we are — then that's the type of comment they need to be aware of.
> THE COURT: Okay.

---

[5] See *Williams v. State*, 176 Ga. App. 503, 505 (1) (336 SE2d 367) (1985).

[6] Id.

[7] *Igidi v. State*, 251 Ga. App. 581, 586-587 (5) (554 SE2d 773) (2001).

MR. STARKS: I think I would say that, and maybe — I mean, the law that we have on the amber lights is what's in that Exhibit 89. You know it.

THE COURT: Then maybe I'll say, other than what I've instructed you on, there's no additional law on amber lights.

MR. MARSH: Yeah.

THE COURT: Is that okay?

MR. MARSH: Yeah.

The trial court then charged the jury, "Folks, in response to the second part of your question regarding amber lights, other than the law that I've already instructed you on, there is no additional law as to amber lights." No further comment or objection regarding the clarification was made by Hersh's counsel.

It is well established that when the jury requests the trial court to re-charge them on a particular point, it is the duty of the trial court to do so in order to ensure that the jury clearly understands the applicable law.[8] "Thus, reversible error may result when the trial court refuses to re-instruct the jury after it requests further enlightenment on particular points of law."[9] However, in the present case, the trial court did not refuse to re-instruct the jury. The trial court met with the parties and all the parties agreed that there was no law on the requested point and that the trial court should simply tell the jury that there was no additional law other than what was previously instructed. Under the circumstances, sending a message to the jury to consider the instructions previously given was sufficient, especially in light of the parties' acquiescence in this course of action. We find no error.

2. Hersh contends the trial court erred in granting Finch's and Johnson's motions for directed verdict on the basis of official immunity. The trial court found that the two police officers were performing traffic functions which are discretionary acts, that there was no showing of actual intent to harm, and that the Department of Transportation's regulations on house moving applied to the person obtaining the permit, not the officers. We agree with the trial court and affirm its grant of directed verdicts to Finch and Johnson.

A suit against a public officer acting in his official capacity will be barred by official immunity unless the public officer (1) negligently performed a ministerial duty, or (2) acted with actual malice or an actual intent to cause injury while performing a discretionary duty.[10]

---

[8] See *Glisson v. Glisson*, 268 Ga. 164, 165 (1) (486 SE2d 167) (1997).

[9] Id.

[10] See *Lincoln County v. Edmond*, 231 Ga. App. 871, 874-875 (2) (501 SE2d 38) (1998).

Public officials are immune from damages that result from their performance of discretionary functions, where undertaken without malice or intent to cause injury.[11] The decision whether acts of a public official are ministerial or discretionary is determined by the facts of the particular case.

> A ministerial act is commonly one that is simple, absolute, and definite, arising under conditions admitted or proved to exist, and requiring merely the execution of a specific duty. A discretionary act, however, calls for the exercise of personal deliberation and judgment, which in turn entails examining the facts, reaching reasoned conclusions, and acting on them in a way not specifically directed.[12]

In this case, there is no allegation and no evidence that Finch and Johnson acted with actual malice or intent to injure. Thus, the only issue in applying the official immunity doctrine is whether the officers were performing ministerial or discretionary duties when acting as escorts for the house-moving convoy. Hersh's sole argument on appeal regarding liability against the police officers is that the officers failed to follow the Georgia Department of Transportation regulations for moving houses. Specifically, she notes that the police cars did not have wide load signs in front of their cars, did not have amber lights on top of the cars, and did not have two-way radios to communicate with the truck carrying the house. She argues that failing to follow these requirements constituted ministerial acts for which the officers would be liable. However, the trial court correctly found that there is no ministerial duty as it relates to the regulations because the regulations do not apply to the police officers.

Section 672-2-.03 of the Georgia Department of Transportation regulations states:

> In addition to compliance with any other conditions imposed on the issuance of a particular permit, any person receiving a permit from the Department thereby certifies that said person will comply or has complied (as applicable herein) with the following conditions governing the operation of permitted vehicles or loads.

The regulation goes further to say that "a person receiving a permit for the movement of a house certifies that said person will or has

---

[11] See *Phillips v. Walls*, 242 Ga. App. 309, 311 (1) (529 SE2d 626) (2000).
[12] (Citation omitted.) Id.

complied, as applicable, with the following conditions: (a) Said person will use the following minimum equipment for moving the house...."[13] It is undisputed that the police officers did not apply for or ever receive a permit for moving the house at issue. Since the Department of Transportation regulations are directed against the person obtaining the permit, any failure to follow the regulations would potentially bestow liability on Griffith, not the officers.

In addition, the evidence in this case shows that there were four escort vehicles and two police cars participating in the move. Griffith testified that his vehicles, not the police vehicles, were the escort vehicles. Hersh's assertion that the police cars were escort vehicles and needed to be marked as such is contrary to state law, which mandates proper markings for police cars.[14] In accordance with state law, Officers Finch and Johnson could not have operated amber lights on top of their police vehicles.[15]

The trial court also correctly found that the officers performed discretionary acts in this case. It is undisputed that Finch and Johnson were escorting the house in an effort to signal the general public away from the house and control the traffic during the move. Finch and Johnson exercised their own personal judgment deciding in what lanes to drive, how to signal oncoming traffic, when to stop oncoming traffic, etc. Finch testified that at times he brought traffic to a complete stop and blocked roads; other times he chose not to block the road. Controlling traffic is a discretionary function, and the trial court correctly found that the officers in this case controlled traffic during the house move. And, even a police officer who negligently directs traffic and thereby causes a collision is entitled to official immunity.[16] We find no error.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED MARCH 7, 2007 — 

*Garland, Samuel & Loeb, David E. Tuszynski,* for appellant.

---

[13] Ga. Comp. R. & Regs. r. 672-2-.04 (1) (a).

[14] See OCGA § 40-8-91.

[15] See OCGA § 40-6-6 (c) and (e) (police cars are required to have a flashing or revolving blue light, and it is unlawful for a person to operate a law enforcement vehicle with flashing lights other than the blue light).

[16] See *Sommerfield v. Blue Cross & Blue Shield of Ga.*, 235 Ga. App. 375, 376-377 (1) (509 SE2d 100) (1998).

*Thurbert E. Baker, Attorney General, Loretta L. Pinkston, Assistant Attorney General, David B. Fife, Assistant District Attorney, Paula A. Morgan, Rory K. Starkey*, for appellees.